WILLIAM BRADFORD *vs.* MARLENE KNIGHTS & another.[1]

Suffolk. May 5, 1998. - July 7, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & MARSHALL, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Boston Municipal Court. District Court. Practice, Criminal,* Complaint, Appeal.

Judges of the Boston Municipal Court have inherent authority to rehear a denial by a clerk of that court of an application for issuance of process on a criminal complaint. [750-753]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on October 17, 1997.

The case was reported by *Ireland,* J.

*Frank L. Fragomeni, Jr.,* for Marlene Knights.

*Joseph J. Balliro (Joseph J. Balliro, Jr.,* with him) for the plaintiff.

*William J. Duensing,* Assistant Attorney General, for Boston Municipal Court Department.

FRIED, J. The plaintiff, William Bradford, obtained a judgment from a single justice of this court pursuant to G. L. c. 211, § 3, vacating a scheduled rehearing before a justice of the Boston Municipal Court Department (BMC) of a citizen's application for a criminal complaint. The criminal complaint had earlier been denied by a clerk of that court. Such a hearing does not deprive Bradford of a substantive right and therefore relief pursuant to G. L. c. 211, § 3, would not usually be available. The general importance of the question presented to us for the first time makes it appropriate, however, for us to pass on the merits of the claim. We conclude that the judges of the BMC have inherent authority to rehear denials of applications for criminal complaints by clerks of that court.

I

Bradford and Knights had a fight, which eventually attracted

___

[1]The Boston Municipal Court Department, as a nominal party.

the attention of the police who arrested Knights and charged her with assault and battery by means of a dangerous weapon.[2] One week later Knights applied to an assistant clerk-magistrate of the BMC for the issuance of a criminal complaint against Bradford, alleging that it was he who had committed assault and battery by means of a dangerous weapon against her. After a hearing at which both Bradford and Knights were represented by counsel and both presented evidence, an assistant clerk-magistrate concluded that there was no probable cause and declined, "without prejudice," to issue the complaint. Knights was dissatisfied with this result and by letter of her counsel requested a hearing before a judge. The letter specifically made reference to standard 3.21 of the Standards of Judicial Practice, The Complaint Procedure of the District Court Department of the Trial Court (June 1975). A hearing was scheduled and Bradford and Knights appeared before a judge of the BMC, where Bradford stated that he was prepared to offer the testimony of several witnesses. Those proceedings were stayed pending the disposition of Bradford's petition to a single justice of this court, in which Bradford claimed that there was no lawful basis for a second determination when a citizen had sought a criminal complaint and been denied. The single justice agreed and granted Bradford relief under G. L. c. 211, § 3. The single justice denied Knights's request for reconsideration of his judgment and reaffirmed his previous ruling. In part because a single justice had previously reached a contrary conclusion in Noonan *vs.* District Court Dep't of the Trial Court, Framingham Div., S.J.C. No. SJ-85-31 (March 5, 1985), however, the single justice reported the case to the full court.

## II

"A party seeking review under c. 211, § 3, must 'demonstrate both a substantial claim of violation of [their] substantive rights and error that cannot be remedied under the ordinary review process.' *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, [406 Mass. 701, 706 (1990)], quoting *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986)." *McGuinness* v. *Commonwealth*, 420 Mass. 495, 497 (1995). One charged with a crime must defend himself against the criminal charge, seek its dismissal, and raise all available defenses in the course of

---

[2]We are advised that a jury later acquitted Knights of this charge.

the criminal proceedings. Being required to defend oneself in these circumstances is not in itself a cognizable harm, violates no substantive right, and therefore raises no occasion for relief under G. L. c. 211, § 3. The exception we make for one who claims that a prosecution violates his right not to be put twice in jeopardy carries its own limitation: the substantive right includes the right not to be prosecuted a second time for the same offense. See *Cepulonis* v. *Commonwealth*, 426 Mass. 1010 (1998); *Gelmette* v. *Commonwealth*, 426 Mass. 1003 (1997). There is, however, another basis for our proceeding to the merits here. Bradford's is that rare case that, while demonstrating no violation of a substantive right, raises an important issue with implications for the administration of justice, and one that is not likely to be presented in the ordinary course of litigation. Therefore, pursuant to our power under G. L. c. 211, § 3, to exercise "general superintendence of the administration of all courts of inferior jurisdiction," we pass to the merits of Bradford's claim.

The statutory provisions authorizing the issuance of criminal complaints by clerks, G. L. c. 218, §§ 35 and 35A,[3] make no mention of an unsuccessful applicant having a right to appeal, or to seek review or rehearing of that decision. There has, however, been a practice in the BMC and the District Court Department, where it is embodied in a formal standard of judicial practice, standard 3:21, to allow a new hearing before a

---

[3]Section 35A provides in pertinent part:

"If a complaint for a misdemeanor is received by a district court, or by a justice, associate justice or special justice thereof, or by a clerk, assistant clerk, temporary clerk or temporary assistant clerk thereof under section thirty-two, thirty-three or thirty-five, as the case may be, the person against whom such complaint is made, shall, if not under arrest for the offen[s]e for which the complaint is made, upon request in writing, seasonably made, be given an opportunity to be heard personally or by counsel in opposition to the issuance of any process based on such complaint.

"If such complaint is received, the court, or any of said officers referred to in the preceding paragraph, shall, unless there is an imminent threat of bodily injury, of the commission of a crime or of flight from the commonwealth by the person against whom such complaint is made, give to said person, if not under arrest for the offense for which the complaint is made, notice in writing of such complaint; and said person shall be given an opportunity to be heard in opposition to the issuance of process as provided in the first paragraph. . . .

"The court, or said officer thereof, may upon consideration of the evidence cause process to be issued unless there is no probable cause to believe that the person who is the object of the complaint has committed the offense charged."

judge at the judge's discretion.[4] The right of a citizen to obtain a criminal complaint is itself something of an anomaly, because in modern times the formal initiation and prosecution of criminal offenses is usually the domain of public officials. Accordingly, even where the Legislature has given a private party the opportunity to seek a criminal complaint, we have uniformly held that the denial of a complaint creates no judicially cognizable wrong. See *Whitley* v. *Commonwealth*, 369 Mass. 961, 962 (1975) (the rights to pursue criminal prosecution "are not private but are in fact lodged in the Commonwealth as it may proceed to enforce its laws"). See also *Tarabolski* v. *Williams*, 419 Mass. 1001 (1994); *Taylor* v. *Newton Div. of the Dist. Court Dep't*, 416 Mass. 1006, 1006 (1993) ("it is settled beyond cavil that a private citizen has no judicially cognizable interest in the prosecution of another"). Nonetheless the Legislature has allowed private parties to seek criminal complaints in the case of misdemeanors. G. L. c. 218, § 35A. Perhaps this encourages a sense of public participation in the enforcement of the criminal law, and also these often more minor matters may include the frictions and altercations of daily life, which may not attract the attention of the police or the public prosecutor but yet may rankle enough that resolution is required if peace is to be maintained. It appears that clerks and magistrates often use the hearings which the statute requires as an occasion to effect an informal settlement of grievances, and if that happens regularly it is reason enough for the procedure. See Snyder, Crime and Community Mediation — The Boston Experience: A Preliminary Report on the Dorchester Urban Court Program, 1978 Wis. L. Rev. 737.

---

[4]Standard 3:21 states:

"If the clerk denies an application and if the complainant manifests serious dissatisfaction, he should be told that he may request a new hearing before a judge of the court. If a new hearing is requested it should be afforded as promptly as possible, and the clerk should provide the judge with the application."

The commentary to the standard states:

"A new hearing need not follow every denial of an Application. Indeed, the law does not specifically provide for a rehearing at all and it can be inferred only as a result of the coextensive authority among magistrates to receive an Application. See G. L. c. 218, §§ 33 and 35. However, in the interest of insuring that public confidence in the courts is maintained at a high level, time should be allotted by a judge for rehearing where serious dissatisfaction is affirmatively registered by a complainant. Verbalizing one's disagreement need not be the sole basis for rehearing by a judge, however."

Because "a private citizen lacks a judicially cognizable interest in the prosecution . . . of another," we have consistently declined to review, under the authority given to us by G. L. c. 211, § 3, refusals to issue complaints. *Tarabolski* v. *Williams*, *supra* at 1002, quoting *Linda R.S.* v. *Richard D.*, 410 U.S. 614, 619 (1973). Nor does the statute grant any mechanism of review, rehearing, or appeal.[5] If there is such a right it must be inherent in the nature and authority of the courts receiving such complaints. And that is how the District Court's standard 3:21 approaches the issue. The commentary states that "time should be allotted by a judge for rehearing where serious dissatisfaction is affirmatively registered by a complainant." This language clearly shows that the standards consider the reconsideration by the judge to be in the nature of a rehearing. The inherent power of a court in a timely and regular way, which violates no other provision of law, to rehear and reconsider its own determinations at its discretion has long been recognized.

> "While the Massachusetts Rules of Criminal Procedure do not expressly permit a judge to rehear a matter, no policy prohibits reconsideration of an order or judgment in appropriate circumstances. 'It was one of the earliest doctrines of the common law that the record of a court might be changed or amended at any time during the same term of the court in which a judgment was rendered.' "

*Commonwealth* v. *Cronk*, 396 Mass. 194, 196 (1985), quoting *Fine* v. *Commonwealth*, 312 Mass. 252, 255 (1942). That the standard provides for a rehearing by a judge of a clerk's decision does not change the fact that the rehearing is within the same court and accords with procedures and practices of that court.[6]

The BMC is a separate department of the Trial Court, and is

---

[5]Knights notes that § 35 requires that records of applications for complaints that have been denied shall be destroyed after one year, unless a justice of the court in which they were filed for good cause orders otherwise, and that the "clerk shall enter on the face of any application so denied a conspicuous notation to that effect." G. L. c. 218, § 35. From this Knights suggests that some sort of right of review might be inferred. Certainly these provisions are consistent with the existence of some right of review and may be a necessary condition for review, but these provisions cannot be taken as granting such a right of review for that reason.

[6]In transmitting the standard and commentary to the court, Chief Justice Zoll of the District Court, in a letter to the clerk of the Supreme Judicial

not one of the District Courts of the Commonwealth. We have been cited to no rules of the BMC equivalent to those of the District Court. The BMC does, however, in this as in many other matters exercise similar jurisdiction to that of the District Courts. In her letter to the clerk of the BMC, Knights made specific reference to the District Court standards and couched her request for a hearing before a judge in terms of the commentary to standard 3:21. The BMC, being a smaller and more concentrated body of judges and clerks, has perhaps not found it necessary to formalize in rules the conditions for the exercise of what we have held to be an inherent power. The public might be better served if there were such an explicit standard, but its absence does not count against the propriety of what was done here.

Bradford argues that to grant the benefit of such a procedure to the complainant but not to the person complained against is a denial of equal protection, thus violating the equal protection clause of the Fourteenth Amendment to the United States Constitution and art. 1 of the Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution. The argument is wholly without merit. Nothing prevents Bradford from seeking a rehearing, although he prevailed in the original hearing and thus has no reason to do so. If the person complained of believes that there was not probable cause to charge him with a crime, he may move to dismiss the complaint. Absent the procedure here, however, the complainant has no further recourse if his application for a complaint is denied.

The decision of the single justice vacating the hearing scheduled by the BMC is reversed. The case is remanded to the Supreme Judicial Court for the county of Suffolk for entry of an appropriate order.

*So ordered.*

Court for the county of Suffolk, stated that "[t]his Standard and the procedure it recommends are of significant importance to every District Court throughout the Commonwealth."