432 Mass. 693 (2000)                                     693

Commonwealth *v.* Clerk of the Boston Division of the Juvenile Court Department.

## COMMONWEALTH *VS.* CLERK OF THE BOSTON DIVISION OF THE JUVENILE COURT DEPARTMENT.[1]

Suffolk. September 11, 2000. - November 28, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Practice, Criminal,* Complaint, Appeal by Commonwealth. *Juvenile Court,* Clerk-magistrate. *Constitutional Law,* Judiciary, Separation of powers. *District Attorney. Statute,* Construction.

Where the Commonwealth had no adequate appellate remedy for a clerk-magistrate's holding "open," and refusing to either grant or deny, a request for issuance of process in a criminal matter in the Boston Juvenile Court, the invocation of G. L. c. 211, § 3, was appropriate. [696-698]

A clerk-magistrate of the Boston Juvenile Court acted beyond statutory or inherent authority in delaying action or refusing to act on an application for process in a criminal matter, over the objection of the complainant or the Commonwealth. [698-700]

This court concluded that *Commonwealth* v. *Brandano,* 359 Mass. 332, 337 (1971), which sets forth standards of procedure applicable to dismissal of a criminal case without the consent of the Commonwealth and limiting the discretion of judges, had no applicability to a clerk-magistrate. [700]

There was no merit to a claim that the term "may," appearing in G. L. c. 218, § 35A, grants unlimited discretion to clerk-magistrates, unconstrained by the District Court Complaint Standards or other rules or statutes. [700-701]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 28, 1999.

The case was considered by *Lynch,* J.

*Christopher Pohl,* Assistant District Attorney, for the Commonwealth.

---

[1]Amicus briefs were filed by the Administrative Office of the Trial Court; the Association of Magistrates and Assistant Clerks of the Trial Court; the Boston Municipal Court; the Boston police department, with a supplement; the district attorneys for the Bristol, Eastern, Hampden, Middle, and Plymouth districts; Gay & Lesbian Advocates and Defenders, and others; and the Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association. We also received a letter from the Chief Justice of the District Court Department.

694                                    432 Mass. 693 (2000)

Commonwealth *v.* Clerk of the Boston Division of the Juvenile Court Department.

*Conrad John Bletzer, Jr.,* for the juvenile.

The following submitted briefs for amici curiae:

*Merita A. Hopkins & Alicia S. McDonnell* for Boston Police Department.

*Barbara J. Dougan* for Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association.

*Gary M. Bishop* for Boston Municipal Court Department.

*Carl Valvo & Angela G. Lehman* for Association of Magistrates and Assistant Clerks of the Trial Court.

*Jennifer L. Levi* for Gay & Lesbian Advocates and Defenders.

*John J. Conte,· Paul F. Walsh, Jr., Kevin Michael Burke, William M. Bennett, & Michael J. Sullivan,* District Attorneys, *& Katherine E. McMahon,* Assistant District Attorney, for District Attorney for the Bristol District & others.

*Alexander G. Gray, Jr.,* for Administrative Office of the Trial Court & others.

ABRAMS, J. Pursuant to G. L. c. 211, § 3, the Commonwealth appeals from a single justice's denial of its request for an order requiring the first assistant clerk-magistrate (magistrate) of the Boston Juvenile Court to either grant or deny its request for criminal process to issue against a juvenile under G. L. c. 218, § 35A. The magistrate had declined to grant or deny the request but had held the application "open" in contemplation of dismissal. The magistrate also had ordered the juvenile to comply with certain conditions during the time period that the application was kept pending. On appeal the Commonwealth asserts that the magistrate erred in failing either to grant or deny its application for criminal complaints. The Commonwealth argues that the magistrate lacks authority to simply hold its application open conditionally. We agree. We vacate the judgment of the single justice denying the Commonwealth's request for relief.[2]

We set forth the facts. On April 17, 1998, Greg Margolin, his son, and two other young men were walking to a temple in the Brighton section of Boston for services. They were dressed in formal attire for services, including yarmulkes (skull caps). An automobile with four white males slowly drove by Margolin

[2]The Commonwealth suggests this case may be moot but that we should decide the case because the issue is likely to recur. See, e.g., *Commonwealth* v. *Taylor,* 428 Mass. 623, 623-624 (1999). We agree that the issue is likely to recur and therefore we address the merits of the Commonwealth's appeal.

and the young men. The driver shouted obscenities at Margolin and his companions. The men in the car also made obscene gestures toward Margolin and his companions. Another male in the automobile tossed a lit cigarette at two of the young men. The automobile drove on, abruptly turned around, and again approached Margolin and the young men. The driver pulled the automobile into the lane next to the sidewalk and again shouted obscenities. When Margolin looked toward the automobile, the driver shouted, "What are you looking at?" When Margolin did not respond, the driver exclaimed, "I'm talking to you!" The automobile then drove away.

Margolin and the young men immediately walked to a nearby Boston police station and reported this incident. Margolin recited the registration number of the automobile. A police investigation followed. That investigation included an interview with the juvenile. The juvenile admitted that he and his companions "said something" to Margolin and the young men. Thereafter, Detective John Maloof of the Boston police department sought, on behalf of the victims, four counts of "violation of civil rights," G. L. c. 265, § 37 (a misdemeanor). At the show cause hearing conducted by the magistrate of the Boston Juvenile Court (BJC), the juvenile admitted he was the driver of the automobile.

At the conclusion of the hearing, the magistrate informed the parties that he would neither grant nor deny the application for issuance of process against the juvenile. Instead, he indicated that the application would remain "open" until December 31, 1999. The magistrate informed the juvenile that any further incidents would result in the issuance of process. In the interim, the magistrate ordered the juvenile to (i) write letters of apology to Margolin and each of the young men, to be conveyed through Detective Maloof, (ii) stay away from Margolin and the young men, (iii) successfully complete a diversity awareness program, and (iv) furnish the names of the other passengers in the vehicle at the time of the incident. The magistrate also "ordered" the police department to provide him with status reports on the juvenile's compliance with these conditions.[3]

After learning of the magistrate's decision, Margolin told

---

[3]The juvenile concedes that the magistrate exceeded his authority in ordering members of the Boston police department to provide the magistrate with status reports on the juvenile's compliance with the conditions the magistrate had ordered. The Commonwealth agrees and notes that "as a result of the

696                             432 Mass. 693 (2000)

Commonwealth *v.* Clerk of the Boston Division of the Juvenile Court Department.

Detective Maloof that he wished to appeal, but the magistrate replied that, because the application remained "open," there was no avenue of appeal available. Subsequently, Detective Maloof and Sergeant Detective Robert Albano, accompanied by an assistant district attorney, appeared before the magistrate, seeking reconsideration of his earlier decision, and a "final determination." They requested the magistrate either to grant or deny the request for the issuance of process. If the magistrate did not do so, the assistant district attorney said that his office would seek leave to appeal. The magistrate affirmed his previous decision, but agreed to consult with his supervisor, the magistrate of the BJC on the matter. After doing so, the supervising magistrate reportedly spoke with a judge in the Suffolk County Juvenile Court, who agreed that a new hearing could be arranged.

No hearing was held, however, and no further action was taken by the magistrate with respect to the application. The district attorney's office filed a petition with a single justice seeking relief pursuant to G. L. c. 211, § 3. The single justice denied the petition. The Commonwealth appeals. We vacate the denial.

1. *Relief pursuant to G. L. c. 211, § 3.* The juvenile asserts that the Commonwealth improperly invoked G. L. c. 211, § 3. We do not agree. The Commonwealth did not have an adequate appellate remedy and relief pursuant to G. L. c. 211, § 3, was appropriate.

The Commonwealth acknowledges that a magistrate has the power, pursuant to G. L. c. 218, § 35A,[4] to grant or deny the issuance of process with respect to criminal complaints, including those sought against this juvenile. The Commonwealth asserts

. . . [m]agistrate's actions the investigating detective became a conscript of the [p]robation [d]epartment."

[4]General Laws c. 218, § 35A, reads, in pertinent part: "If a complaint for a misdemeanor is received by a district court, or by a justice, associate justice or special justice thereof, or by a clerk, assistant clerk, temporary clerk or temporary assistant clerk thereof . . . the person against whom such complaint is made, shall, if not under arrest for the offence for which the complaint is made, upon request in writing, seasonably made, be given an opportunity to be heard personally or by counsel in opposition to the issuance of any process based on such complaint. . . .

"The court, or said officer thereof, may upon consideration of the evidence cause process to be issued unless there is no probable cause to believe that the

the magistrate lacked authority to keep its application for criminal process "open."

Our power of "general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is *expressly provided*" is "extraordinary" and will only be exercised in "the most exceptional circumstances" (emphasis added). *McGuinness* v. *Commonwealth*, 420 Mass. 495, 497 (1995), quoting *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 706 (1990). Further, a party seeking review under G. L. c. 211, § 3, must demonstrate both a substantial claim that a violation of the party's substantive rights occurred below, and that this error cannot be corrected through the ordinary appellate process. *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue, supra,* quoting *Dunbrack* v. *Commonwealth,* 398 Mass. 502, 504 (1986).

The juvenile accepts the contention that G. L. c. 218, §§ 35 and 35A, do not provide a right of appeal to an unsuccessful applicant. Relying on our decision in *Bradford* v. *Knights,* 427 Mass. 748, 751 (1998), the juvenile argues that the Commonwealth has failed to show that any error it has been subjected to cannot be remedied under the ordinary appellate review process. We do not agree. There is no support for the juvenile's argument that the Commonwealth has a "right" under standard 3:21 of the District Court Standards of Judicial Practice: The Complaint Procedures (1975) (District Court complaint standards) to petition a judge of the BJC for a review of the magistrate's decision to hold this matter open. Standard 3:21 does not apply to the BJC.[5] We have, however, said that the judges of the BJC have inherent authority to rehear *denials*

---

person who is the object of the complaint has committed the offense charged.

"The term district court as used in this section shall include the Boston municipal court department."

[5]Compare *Bradford* v. *Knights,* 427 Mass. 748, 752 (1998): "The inherent power of a court in a timely and regular way, which violates no other provision of law, to rehear and reconsider its own determinations at its discretion has long been recognized" with *id.* at 753: "The [Boston Municipal Court], being a smaller and more concentrated body of judges and clerks, has perhaps not found it necessary to formalize in rules the conditions for the exercise of what we have held to be an inherent power. The public might be better served if there were such an explicit standard, but its absence does not count against the propriety of what was done here." The Commonwealth noted that, if the BJC had chosen to follow the District Court complaint standards in the present instance, this case would not be before us. See notes 11 and 13, *infra.*

of applications for criminal complaints by magistrates of that court. *Bradford* v. *Knights, supra* at 748. Here, the Commonwealth sought a reconsideration of the magistrate's decision to defer action on its application. After reconsideration by the magistrate, which still did not result in either the granting or denial of its application, the Commonwealth had no express appellate remedy. Therefore, relief pursuant to G. L. c. 211, § 3, was properly sought.[6]

The juvenile asserts that *any* disposition of a complaint by a magistrate was a "decision" that could then be appealed under *Bradford*. But there is nothing in *Bradford* that would equate a denial of a criminal complaint by a clerk with holding such a complaint "open." The magistrate himself told the adult victim and the police that his ruling was not appealable. We reject the juvenile's argument that the magistrates of the BJC may exercise potentially unbridled discretion by holding complaints "open," without any avenue of appeal for the Commonwealth.[7]

We add that the Commonwealth may well be the only party that has standing to challenge the magistrate's actions in the case before us. "[T]he right[] to pursue criminal prosecution '[is] not private but [is] in fact lodged in the Commonwealth as it may proceed to enforce its laws.' " *Bradford* v. *Knights, supra* at 751, quoting *Whitley* v. *Commonwealth*, 369 Mass. 961, 962 (1975). In the absence of any other appellate remedy, we conclude that the complaint for relief pursuant to G. L. c. 211, § 3, is properly before us.[8]

2. *Inherent judicial powers.* We turn now to the juvenile's

---

[6]There is no merit to the juvenile's argument that indictment by a State or Federal grand jury is an adequate appellate remedy for the Commonwealth.

[7]Our decision in *Commonwealth* v. *Norrell*, 423 Mass. 725 (1996), also illustrates the limits of the juvenile's reliance on G. L. c. 218, § 60. This statutory provision establishes that the Chief Justice for the Juvenile Court Department may, "from time to time, provide procedural forms and make general rules and issue standing orders in reference to practice and procedure for the conducting of business in the juvenile court department, subject to the approval of the supreme judicial court." General Laws c. 218, § 60, does not provide an "alternative, adequate appellate remed[y]" for the Commonwealth. Even if it did so, no rule issued could create a complaint resolution procedure which would exceed "the boundaries of existing rules and statutes." *Commonwealth* v. *Norrell, supra* at 729.

[8]Counsel for the juvenile stated that the exercise of discretion by magistrates of the Boston Juvenile Court in holding complaints open need *not* be subject to appeal, because the exercise of such broad discretion is a matter of long-standing "tradition." There is no "tradition" in our courts that permits

argument that the magistrate possesses inherent judicial powers that allow for dispositions such as the one being challenged here. "The Juvenile Courts, like all the courts of the Commonwealth, except the Supreme Judicial Court, are creatures of the Legislature and derive their powers, other than those powers that are inherent in all courts . . . from the Legislature" (citations omitted). *School Comm. of Worcester* v. *Worcester Div. of the Juvenile Court Dep't,* 410 Mass. 831, 834 (1991). While we have recognized implied powers as "inherent" in courts when the power in question is needed to allow the court to function, such power should arise by *"necessary implication* from constitutional or statutory provisions" (emphasis added). *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.,* 374 Mass. 640, 664 (1978). When we noted that judicial authority was not limited to adjudication, but extended to certain ancillary functions such as rule-making and judicial administration, none of the examples we provided suggested that the principle is analogous to the broad authority now claimed by the magistrate. See *id.,* discussing *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 510 (1972).

The magistrate's inherent power is not sufficient to justify the action taken here. "[O]ur decisions uniformly uphold a prosecutor's wide discretion in deciding whether to prosecute a particular defendant," and that such prosecutorial discretion is "exclusive to the executive branch." *Commonwealth* v. *Taylor,* 428 Mass. 623, 629 (1999). See *Commonwealth* v. *Gordon,* 410 Mass. 498, 500 (1991). Further, "[a] court is not a prosecuting officer . . . . Its office is judicial — to hear and determine between the Commonwealth and the defendant." *Gordon, supra,* quoting *Commonwealth* v. *Hart,* 149 Mass. 7, 8 (1889). "The district attorney is the people's elected advocate for a broad spectrum of societal interests — from ensuring that criminals are punished for wrongdoing, to allocating limited resources to maximize public protection." *Id.* at 500.[9] Judges

unbridled discretion to go unchecked. Indeed, when the dismissal of a criminal case was proposed by the judge without the consent of the Commonwealth, we set forth a procedure to ensure that the Commonwealth could appeal such a decision. See discussion at note 10, *infra; Commonwealth* v. *Brandano,* 359 Mass. 332, 337 (1971).

[9]The cases cited by the juvenile are not to the contrary, and are inapposite to the extent that they do not address the unique status of the district attorney on matters of standing. See *Burlington* v. *District Attorney for the N. Dist.,*

and magistrates may not silence the voice of the people's elected prosecutors by simply delaying action on the prosecutor's application for process.

3. *Continuance.* Both the juvenile and the Commonwealth characterize the magistrate's disposition in this matter as a continuance, rather than an entry of a final judgment. While it is well settled that the granting of continuances for criminal defendants is within the discretion of a trial judge, such discretion is nevertheless explicitly bounded by law. See *Commonwealth v. Taylor, supra* at 626-628. In the *Taylor* case, *supra* at 629, we said that a judge may not dismiss a case before trial over a district attorney's objection without following the carefully structured standards of procedure established by this court in *Commonwealth v. Brandano,* 359 Mass. 332, 337 (1971).[10] *Brandano* had two functions. It provided the Commonwealth with an appeal prior to the promulgation of Mass. R. Crim. P. 13, 378 Mass. 871 (1979), and the *Brandano* procedures were "aimed at avoiding any art. 30 [of the Massachusetts Declaration of Rights] tensions between the powers of the judiciary and the powers of the executive branch." *Commonwealth v. Norrell,* 423 Mass. 725, 729 (1996). We carefully cabined the discretion of trial judges to avoid interbranch conflicts. The limited authority granted judges in *Brandano* does not apply to magistrates.

4. *Statute.* The juvenile argues that the term "may" in the statute, see note 4, *supra*, represents a grant of almost unlimited discretion, conceding only that the magistrate exceeded his authority in giving direction to officers of the Boston police department as part of the disposition. See note 3, *supra*. The Commonwealth, by contrast, interpreted the term "may" as allowing "informally crafted dispositions," but of the type

_____

381 Mass. 717, 719-720 (1980) ("[I]t is . . . established that the district attorneys may at their choice appear on behalf of the Commonwealth in other criminal cases in the District Courts — such appearance is 'discretionary' ").

[10]When the dismissal of a case is proposed by a defendant or the judge without the consent of the Commonwealth, *Commonwealth v. Brandano, supra* at 337, prescribes a procedure that can include the filing of affidavits, a hearing regarding matters in dispute, bounded discretion for the judge in ultimately disposing of the case, and a right of appeal for the Commonwealth. We need not decide if the promulgation of Mass. R. Crim. P. 15, as appearing in 422 Mass. 1501 (1996) (which permits an appeal by the Commonwealth from dismissal of a complaint or indictment) replaced the *Brandano* procedure.

prescribed by the District Court complaint standards.[11] The commentary accompanying standard 3:00 notes that "[t]he General Laws make it clear by their brevity that the complaint procedure exists mainly to facilitate the determination of probable cause. See G. L. c. 276, § 22." There is no merit to the broad interpretation advanced by the juvenile. The statute in no way supports the unbridled discretion of the magistrate. If process does not issue after the hearing because the magistrate concludes that no probable cause has been shown, that determination should be appealable by the Commonwealth.

The juvenile also rests his broad interpretation of the magistrate's authority on our decision in *Commonwealth* v. *Norrell, supra* at 729-730: "The pretrial stage is the appropriate time for negotiation and agreement on any disposition that

---

[11]Standard 3:08 addresses informal dispositions and states:

"In the interview the magistrate should endeavor to determine if registering the accusation of criminal conduct in fact constitutes a request for institution of criminal proceedings or merely a generalized request for assistance by the complainant.

"Where the complainant is certain that he wishes to institute criminal proceedings, the magistrate should proceed accordingly.

"Complainants who are making a generalized request for assistance may be directed to available resources, including the probation department, for appropriate assistance, and helped in any way the court reasonably can. In such cases, if the facts appear to justify such action, the magistrate may refer the case to the police for further investigation and possible prosecution.

"If a complainant is uncertain how he wants to proceed, further consideration should be deferred in order to afford him an opportunity to make a decision. Notwithstanding the complainant's uncertainty, however, in appropriate circumstances the magistrate should consider taking affirmative action as required by the duties of his office."

The commentary to the standard states, in pertinent part:

"The law does not provide specifically for the informal 'disposition' of lay Applications short of the issuance of process. Yet all magistrates know that it is in this area that much good can be accomplished. The initiation of criminal proceedings is a serious step, having major consequences. For this reason, the magistrate should try to determine as best he can what the real objective of the complainant is. *If it is indeed the initiation of a prosecution, and if the complainant can demonstrate probable cause, the magistrate lacks the authority to do other than proceed to issue process.* If, on the other hand, it appears that the complainant is seeking some other kind of assistance, or is uncertain whether he wishes to commence criminal proceedings, the magistrate should explore with the complainant non-criminal alternatives if the magistrate feels such alternatives are appropriate to the circumstances. . . . *It is important, however, that the magistrate not usurp the role of the prosecutor. Prosecution is an executive and not a judicial function*" (emphasis added).

702                                   432 Mass. 693 (2000)

Commonwealth v. Clerk of the Boston Division of the Juvenile Court Department.

avoids trial." The *Norrell* case, however, does not support the juvenile's argument; it stands for the proposition that a District Court judge lacks the authority to continue a criminal case without a finding over the Commonwealth's objection after a bench trial. *Id.* at 726-730. Ironically, the authority for imposing a continuance without a finding after a bench trial in *Norrell* was found to derive from the Standards of Judicial Practice, Sentencing and Other Dispositions of the District Court Department of the Trial Court (Sept. 1984), and we observed in *Norrell* that the standard is *"not intended to create a new form of criminal disposition that can be utilized beyond the boundaries of existing rules and statutes"* (emphasis added). *Id.* at 729. Courts cannot create standards for authorizing certain dispositions that exceed the bounds of existing rules and statutes.

We acknowledge that clerks and magistrates often use the hearing that G. L. c. 218, § 35A, requires "as an occasion to effect an informal settlement of grievances, and if that happens regularly it is reason enough for the procedure." *Bradford, supra* at 751, citing Snyder, Crime and Community Mediation — The Boston Experience: A Preliminary Report on the Dorchester Urban Court Program, 1978 Wis. L. Rev. 737, 746-747. But a desirable outcome is *not* a reason to say that the procedure may be unconstrained by existing statutes, cases, and rules, and not subject to review.

The Commonwealth correctly observes that whether informal settlement is a positive good depends not on the number of criminal cases "screened out"[12] of the system, but on the manner in which those cases are resolved. The juvenile expresses the concern that, if magistrates are no longer permitted informally to resolve cases, the result will be an enormous increase in the number of annual prosecutions.[13]

---

[12]See *Gordon* v. *Fay*, 382 Mass. 64, 69-70 (1980), quoting Snyder, Crime and Community Mediation — The Boston Experience: A Preliminary Report on the Dorchester Urban Court Program, *supra*: "The implicit purpose of the 35A hearings is to enable the court clerk to screen a variety of minor criminal or potentially criminal matters out of the criminal justice system through a combination of counseling, discussion, or threat of prosecution . . . ." See also *Commonwealth* v. *Tripolone*, 44 Mass. App. Ct. 23, 27 (1997); *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 235 (1983).

[13]Our decision is not intended to discourage adherence to the standards of informal resolution, such as standard 3:08 of the District Court Complaint Standards and its accompanying commentary, see *supra* at note 11, long fol-

We are confident that the valuable, albeit informal, screening function performed by magistrates will continue to be welcomed and encouraged by the Commonwealth, to the extent that it does not directly interfere with prosecutorial discretion.

In sum, we conclude that a magistrate does not have the authority to hold a complaint "open" over the objection of the Commonwealth or complainant. The decision of the single justice denying the Commonwealth's G. L. c. 211, § 3, petition is therefore vacated. The matter is remanded to the Supreme Judicial Court for the county of Suffolk for entry of an appropriate form of judgment in favor of the Commonwealth and for remand to the Boston Juvenile Court for action consistent with this opinion.

*So ordered.*

---

lowed by the magistrates of many courts in the Commonwealth. See Comment to Standard 3:00 of the District Court Complaint Standards:

"If the complainant is not interested in having the court's assistance except by way of determining whether process should or should not issue, he has that right. While the magistrate should make known to the complainant the court's availability as a mechanism of less formal dispute settlement, he cannot thrust it into that role if the complainant is unwilling. *If in the final analysis the complainant opts for criminal process and nothing less, that decision must be respected"* (emphasis supplied).

In its amicus brief, the Administrative Office of the Trial Court noted that while these standards "do not, by their terms, apply to actions brought in other departments of the Trial Court . . . these Standards have been looked to as providing appropriate guidance in cases involving similar proceedings in other Trial Court Departments."