District Attorney for the Norfolk District *v.* Quincy Division of the District Court Department.

DISTRICT ATTORNEY FOR THE NORFOLK DISTRICT *vs.* QUINCY
DIVISION OF THE DISTRICT COURT DEPARTMENT.

Suffolk. April 5, 2005. - May 10, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Practice, Criminal,* Complaint. *District Court,* Clerk-Magistrate. *Supreme
Judicial Court,* Appeal from order of single justice.

This court concluded that where police officers made warrantless arrests of
three individuals, who were released on bail to return the following court
day, a clerk-magistrate of the District Court Department was required to is-
sue complaints, and when he failed to do so, the District Court judge was
required to order the complaints to issue without any further consideration
of probable cause. [181-187]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on January 12, 2004.

The case was heard by *Cordy,* J.

*Robert C. Cosgrove,* Assistant District Attorney (*Varsha
Kukafka,* Assistant District Attorney, with him) for the plaintiff.

*Dean A. Mazzone,* Special Assistant Attorney General, for the
defendant.

COWIN, J. Ordinarily, when a police officer makes a warrant-
less arrest of a person and the person is released on bail to
return the following court day, the officer prepares an applica-
tion for a complaint, presents it to a clerk-magistrate, the
complaint issues, and the arrestee appears in court for
arraignment.[1] That procedure was not followed in this case. In
rather unusual circumstances that we describe below, prior to
the issuance of complaints against three individuals who had
been arrested and released on bail, a judge in the District Court
considered whether there was probable cause for the complaints
to issue.

[1]Because the defendants here were under arrest, the procedure of G. L.
c. 218, § 35A, regarding issuance of a complaint when a person is not under
arrest, is inapplicable.

Three complaints were sought against each of these three individuals. The judge refused to issue six of the nine complaints sought and the Commonwealth appealed from his ruling to a single justice of this court pursuant to G. L. c. 211, § 3.[2] The district attorney contended that, as there had already been arrests in these cases (and thus an initial assessment of probable cause), the District Court judge should have ordered the complaints to issue without a probable cause determination. The single justice denied the Commonwealth's petition. We conclude that it was improper for the District Court judge to make a probable cause determination before the complaints had issued. Therefore, we reverse the order of the single justice denying relief, and remand the matter to the county court for an order to issue vacating the District Court judge's decision and directing the complaints to issue.

From the District Court judge's findings of fact and rulings of law and uncontested documentary evidence submitted to him by the Commonwealth, we state the facts and procedural history of this matter.[3] Neither party disputes the essential facts, and it is useful to set them forth in some detail.

1. *The Incident and the Arrests.*

The judge summarized the contents of police reports filed by three officers.[4] According to the report of Sergeant William P. Quigley of the Cohasset police department, on October 11, 2003, an unidentified male motorist honked his car horn and waved to Sergeant Quigley to get his attention. The motorist shouted "Fight! Fight!" and pointed toward Summer Street, and Sergeant Quigley immediately drove there. Approaching the American Legion Post (post), he heard loud yelling from the

---

[2]No question is before us concerning the three complaints that the judge did issue.

[3]After the judge refused to issue the complaints, the Commonwealth filed motions for reconsideration. The judge's findings and rulings were issued in response to the motions for reconsideration. The issues in the original proceeding and in the motions were identical; thus, the fact that the findings and rulings were issued in response to the motions is of no moment.

[4]The judge did not make any findings based on the police reports. Although it is not clear, it appears that the judge was acknowledging that he could not make credibility determinations at this point in the proceedings and that the allegations were to be taken as true for purposes of determining whether the complaints would issue.

side of the building and saw three males on the handicap access ramp. Two men were wrestling and pushing each other; a third male was standing by them, yelling and swearing. The three men were Keith A. Jackson, Adam R. Thibault, and Jerry Cogill. Jackson is the son of the chief of police of Cohasset; Thibault was dating the daughter of the chief of police; and Cogill is the nephew of a sergeant of the Cohasset police department. Sergeant Quigley's report indicates that all three males were intoxicated. (His report also states that the men had broken through the wooden hand railing of the ramp while wrestling, damaging several of its rungs. The judge's findings do not mention this fact and it is unclear how the officer would have seen or known this.) Officer Francis Yannizzi arrived, and as that officer walked up the ramp, Sergeant Quigley heard Jackson say to Officer Yannizzi, in effect, that he should say, "Excuse me." Sergeant Quigley then ordered the three men arrested. Officer Yannizzi's report corroborates Quigley's account of his own interaction with Jackson.

Officer Shellee Peters arrived at the post just after Sergeant Quigley. Her report states that she did not observe fighting or wrestling. When she was at the ramp, she saw two men at the top who were shielding a third person from her view. She walked up the ramp while Sergeant Quigley, at the bottom, radioed for assistance. Her report indicates that as she approached the men, they moved, permitting her to see the third person, Jackson. Officer Peters's report further indicates that Sergeant Quigley walked up the ramp and explained that he had received a report of a fight; the defendants were then separated for questioning. She was at her cruiser when Officer Yannizzi walked by the men on the ramp and her report does not mention any observations of his encounter with Jackson.

The three men were transported to the police headquarters. Each was charged with disorderly conduct, G. L. c. 272, § 53; malicious destruction of property valued over $250, G. L. c. 266, § 127 (based on damage to the ramp); and common-law affray. During booking, Cogill stated to Sergeant Quigley that the three men had been "play fighting," causing the damage to the ramp. Thibault confirmed this account. The men were released on bail shortly after their arrest. The recognizance form that they were

provided states that they were to appear on "Oct. 14/03 at 8:30 A.M." at the Quincy District Court.[5]

2. *The Complaint Application.*

This case concerns an application for a complaint, a process utilized only by police officers who have made an arrest without a warrant.[6] On October 14, the Cohasset police prosecutor presented a clerical supervisor in the clerk-magistrate's office at the Quincy District Court with signed applications for complaints for each arrestee for the above offenses.[7] "Apparently" (the judge's word), the commander of the post had provided the attorney for one of the defendants with a letter stating that the damage to the railing preexisted the date of the incident and was not the result of it, and the defense attorney presented this letter to the police prosecutor at the District Court on the morning of October 14. The prosecutor became concerned about the sufficiency of the evidence to support the complaints and mentioned his concern to an assistant clerk-magistrate who warned him of civil liability if the complaints issued.[8] The prosecutor discussed his concerns with fellow police prosecutors at the Quincy District Court, retrieved the applications from the clerical supervisor, and never presented a complaint to the clerk-magistrate or any of his assistants to be signed.

According to the judge, it was "not clear" whether the police

[5]October 14 was the first business day following the arrests.

[6]There are other ways of commencing criminal proceedings in the District Court in other situations, such as when a person has not been arrested, see, e.g., Standards 3:00-3:26 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975). We address herein only the commencement of proceedings where there has been a warrantless arrest.

[7]The judge noted that an affidavit filed by a clerical supervisor within the clerk-magistrate's office stated that, on receipt of a complaint application resulting from a warrantless arrest (as in these cases), a complaint would be signed by the applicant (the police prosecutor), and the complaint would then be presented to the clerk-magistrate or an assistant and be sworn to prior to issuance by the clerk-magistrate or an assistant. The supervisor further stated that no complaints were typed in these cases because she never had the opportunity to do so.

[8]Although the judge's findings state that the prosecutor was concerned about evidence to support "the complaint," this concern about the sufficiency of the evidence would relate only to one of the complaints, that for malicious destruction of property.

prosecutor's concerns were limited to the implications of the commander's letter. Exhibits to the Commonwealth's motion "make[] clear" that on the morning of October 14, the arresting officer, Sergeant Quigley, told the police prosecutor that he, Quigley, wanted the charges to "go away" before the arraignment of each defendant.[9]

The judge also noted that a letter was sent to the Cohasset chief of police by a worker who was at the post on October 11, and that the letter indicates that it was written at approximately 11:30 p.m. that night — one hour after the incident and the arrest. He stated that he saw individuals "wrestling" on the ramp, that they were not fighting with their fists and that he and another person broke up the "play" fighting.

On November 7, the Commonwealth filed three ex parte motions (with numerous attachments) requesting that the three complaints against each defendant issue. The district attorney requested that the judge issue the complaints himself or direct the clerk's office to do so. The judge held a hearing on the motions at which the district attorney's office contended that it was entitled to a decision, that a probable cause hearing was not appropriate, and that the Commonwealth would not offer further evidence. The judge issued the complaints on the malicious destruction count, but ruled that there was insufficient evidence to support a finding of probable cause as to the remaining complaints, those for common-law affray and disorderly conduct, and denied the motions to issue them. The judge concluded that there was insufficient evidence of public involvement to sustain the charges of common-law affray and disorderly conduct because "no member of the public [was] present" at the time of the arrests. The judge ruled that our law defines an affray as " '[f]ighting together of two or more persons in a public place to the terror of the persons lawfully there.' See G. L. c. 277, § 39." He stated, "No matter what [the arresting officer] may have seen upon his arrival and no matter

---

[9]The judge's findings do not suggest any impropriety by anyone in the district attorney's office. The district attorney's motion states that that office first became aware of the matter from a reporter's inquiry about the arrest of the young men and whether the arrest had resulted in their arraignment in the Quincy District Court.

who was actually involved in the wrestling at that time, there was no member of the public present. A battery may have occurred but there was no affray." He also concluded that because disorderly conduct involves the "purposeful causing of public inconvenience, annoyance or alarm or recklessly creating a risk thereof," there was similarly insufficient evidence of that crime.

3. *Relief Pursuant to G. L. c. 211, § 3.*

The district attorney filed a petition in the county court pursuant to G. L. c. 211, § 3, seeking relief from the District Court judge's denial of the motions to issue complaints. After the single justice denied the petition, the Commonwealth appealed to this court. Neither party contests that the matter is properly before us. Because there is no alternative route of appeal from the refusal of a judge to issue complaints, and because the right to pursue a criminal prosecution rests solely with the Commonwealth, relief under G. L. c. 211, § 3, is appropriate. See *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't*, 439 Mass. 352, 354 n.2 (2003). See also *Commonwealth* v. *DiBennadetto*, 436 Mass. 310, 311-312 (2002) (G. L. c. 211, § 3, review available for judge's action in conducting de novo evidentiary hearing on clerk-magistrate's finding of probable cause where Commonwealth likely is only party with standing but with no right of appeal from adverse determination of probable cause).[10]

4. *Discussion.*

The single justice denied the Commonwealth's petition, ruling that the judge did not abuse his discretion or commit other clear error of law in refusing to issue the complaints because no statute, case, or rule "prohibit[s] the judge from exercising such authority." He also concluded that the finding that the incident was not sufficiently public to warrant issuance of the complaints was not clearly erroneous. We hold that the District Court judge, under the rules in effect at the time, lacked authority to deny the issuance of the complaints and that the complaints should have been issued without a probable cause determination by the judge.

[10]Although the Commonwealth could seek indictments from a grand jury, this would deprive the district attorney of his normal discretion to pursue an action in the District Court.

a. *Authority to issue the complaints.* Although the procedural history of this matter is complex, the nub of the disagreement between the parties can be simply put. The district attorney contends that, when an individual has been arrested, it is the duty of the clerk-magistrate to issue a complaint. When he fails to do so, the court must order the complaints to issue without any further consideration of probable cause, i.e., the judge has no authority to refuse to issue the complaints. Specifically, the district attorney contends that when there is a warrantless arrest, a probable cause assessment has been made initially by the arresting officer, and the issuance of the complaint, whether by a clerk-magistrate or a judge, is essentially a ministerial act. The Attorney General, on behalf of the Quincy District Court, argues on the other hand that the judge believed that the assistant clerk's failure to issue the complaints gave him the opportunity to determine whether probable cause existed for the complaints to issue. We agree with the district attorney. In the unusual posture of this case, the issuance of the complaints was presented to the judge. He, therefore, stood in the shoes of the clerk-magistrate and had no greater authority in the circumstances. Neither the clerk-magistrate nor the judge had authority to make a determination of probable cause at this stage of the proceeding.[11]

Our conclusion is supported by prior cases. See *Commonwealth* v. *Rumkin*, 55 Mass. App. Ct. 635, 637 (2002) ("a determination [of probable cause] is not relevant to the issuance of a complaint following a warrantless arrest"). See also *Commonwealth* v. *Arias*, 55 Mass. App. Ct. 782, 786 (2002), quoting with approval the commentary to Standard 2:04 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975):[12]

"In the case of a person under arrest, it is not the Clerk's function to review whether there was in fact probable cause for the arrest, nor to judge whether the Commonwealth ultimately will fail in its prosecution of the

[11]As discussed *infra*, our holding is limited to those cases arising prior to the effective date of Mass. R. Crim. P. 3 (g) (2), as appearing in 442 Mass. 1502 (2004).

[12]The Standards of Judicial Practice are administrative regulations promulgated by the Chief Justice of the District Court.

case. Only the judge can review these matters when the accused is brought before [the judge.[13]] The Clerk's function in arrest cases is largely administrative; it is designed primarily to insure prompt preparation of the Complaint for use in the courtroom."

See also commentary to Standard 2:00 of the District Court Standards of Judicial Practice, *supra*:

"The Application for Complaint . . . does not call on the magistrate to exercise substantial discretion. It does not call on the court to issue process, the arrest already being an accomplished fact. Nor does it require the Clerk or Assistant Clerk to approve the validity of the arrest or assess the potential strength of the prosecution. The purpose of the Application is simply to capture case information necessary to prepare the documents needed to proceed in the courtroom. It is merely an aid to the court in facilitating the preparation of the Complaint. The Complaint procedure in arrest cases does not include [a] probable cause determination . . . ."

The procedure we have described is distinct from that followed when a complaint for a misdemeanor is sought and the person is not under arrest. In such case, by statute, the judge or clerk-magistrate is specifically authorized to make a determination of probable cause. See G. L. c. 218, § 35A. See also *Commonwealth* v. *Balliro*, 385 Mass. 618, 620 n.2 (1982) (magistrate has "discretion in deciding whether probable cause exists warranting the commencement of a criminal proceeding" where "defendant was not under arrest" and case "involved an application for the issuance of process"). In the matter before us, there have been arrests; these arrests represent an assessment by a representative of the government that, for purposes of the issuance of a complaint, probable cause exists. That is the only requisite assessment on the subject before the complaint issues. After the complaint has issued, whether probable cause in fact existed to support the complaint may be reviewed by means of a motion to dismiss.

---

[13]We construe the reference to review by the judge "when the accused is brought before [the judge]" to refer to a point in the proceedings after the complaint issues. If it is intended to mean otherwise, we are not bound by it.

The present case arises from a different factual situation than those involving the issuance of process on a felony complaint where the person involved is not under arrest. See *Commonwealth v. Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't*, 439 Mass. 352, 357-358 (2003). In such cases, the clerk-magistrate has no authority to hold a show cause hearing (to determine probable cause) prior to acting on the application for issuance of process. In the above case, we determined that the clerk-magistrate's authority to hold show cause hearings is limited by statute, see G. L. c. 218, § 35A, to those complaints involving misdemeanors when the person against whom a complaint is sought is not under arrest. See *id.* The instant case presents a different situation because there had been arrests.

The Attorney General maintains that the judge was not " 'sitting as [a] clerk-magistrate'. . . but acting as a judge of the District Court." As such, he could properly review the matters and make a determination of no probable cause. In support of this proposition, the Attorney General cites Standard 2:04 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975):

> "A clerk need not require a police officer to support the propriety of an arrest or the choice of the crime to be charged. A brief colloquy directed to establishing the prima facie elements of an offense is all that is required. . . . [T]here should be no denial of an application which alleges violation of an existing law by a person under arrest. If a clerk feels he cannot in good conscience grant such an application, he may refer it to the judge."

The Attorney General argues that there is no purpose to the clerk's referral to the judge if the judge is simply to place a signature upon a sworn complaint on presentment of the application. We read this language as meaning only that if, in good faith, the clerk cannot issue the complaint, the judge must. The judge is merely to act in place of the clerk and has no discretion to refuse to issue the complaint.[14] The Attorney General cites the cases of *Commonwealth v. DiBennadetto*, 436

---

[14]To the extent the commentary to this standard suggests that the judge may refuse to issue the complaint, we are not bound by it. The standards "are not intended to . . . be utilized beyond the boundaries of existing rules and

Mass. 310 (2002); *Victory Distribs., Inc.* v. *Ayer Div. of the Dist. Court Dep't*, 435 Mass. 136 (2001); and *Bradford* v. *Knights*, 427 Mass. 748 (1998), as authority for his proposition. None of these cases concerns the issuance of a complaint after warrantless arrest.

We disagree with the determination of the single justice that, although "the current rules of criminal procedure do not require that a judicial officer make a finding of probable cause before issuing a complaint against a person arrested without a warrant (and promptly released from custody), I do not read the rules (or the statute) to prohibit the judge from exercising such authority." This ignores the fact that the power of a "judicial officer," other than an officer of the Supreme Judicial Court, derives from the Legislature. See *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, supra* at 358.

We have recognized "implied powers as 'inherent' in courts when the power in question is needed to allow the court to function, [but] such power should arise by 'necessary implication from constitutional or statutory provisions.' " *Id.*, quoting *Commonwealth* v. *Clerk of the Boston Div. of the Juvenile Court Dep't*, 432 Mass. 693, 699 (2000). We also have recognized that "[j]udicial authority 'is not limited to adjudication, but includes certain ancillary functions, such as rule-making and judicial administration, which are essential if the courts are to carry out their constitutional mandate.' " *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, supra* at 358, quoting *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 664 (1978). No one contends that the power here is one needed to allow the court to function or to carry out its constitutional mandate.

Both the District Court judge and the single justice observed that a revision to Mass. R. Crim. P. 3 (g) (2), as appearing in

statutes." *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't*, 439 Mass. 352, 357 (2003), quoting *Commonwealth* v. *Norrell*, 423 Mass. 725, 729 (1996). See *Commonwealth* v. *Clerk of the Boston Div. of the Juvenile Court Dep't*, 432 Mass. 693, 702 (2000) ("Courts cannot create standards for authorizing certain dispositions that exceed the bounds of existing rules and statutes").

442 Mass. 1502 (2004), which took effect on September 7, 2004, see note 11, *supra*, now requires a judicial officer to make a finding of probable cause before issuing a complaint against a person arrested without a warrant (and promptly released from custody).[15] As the revision was not in effect at the time of these arrests, it does not control the outcome of the case. Indeed, the Reporter's Notes to the revised rules (not available at the time of the single justice's memorandum and order) support our conclusion that the court in the instant case (proceeding under the former practice) was required to order the issuance of the complaints. In changing the practice, the Notes suggest that that practice was precisely as we construe it today. The Reporter's Notes explain, in regard to rule 3 (g) (2), that "[u]nder prior practice [i.e., the practice in effect for the present case], where a complaint was sought against an individual who had been arrested, the appropriate judicial officer did not evaluate the justification for initiating criminal proceedings."[16] Massachusetts Rules of Court 132 (West 2005). Given the unambiguous directive of the revised rule 3 (g) (2), our holding today obviously is limited to those cases initiated before the effective date of the new rule (September 7, 2004).

In granting the Commonwealth's petition and ordering that complaints are to issue, we express no opinion on whether the materials in the record before us suffice to establish probable cause. We merely agree that the Commonwealth was entitled to the issuance of the complaints, and that the proceedings on

---

[15]Rule 3 (g) (2) reads: "The appropriate judicial officer shall not authorize a complaint unless the information presented by the complainant establishes probable cause to believe that the person against whom the complaint is sought committed an offense."

[16]The standing advisory committee on the Massachusetts Rules of Criminal Procedure, which is responsible for drafting the revisions to the rules, states that the reason for the change in rule 3 (g) (2) was that "[d]efendants who have been arrested, and have . . . been . . . released prior to the complaint . . . get no probable cause determination before having to face a criminal complaint." See Proposed Revisions to the Rules of Criminal Procedure, Final Submission and Report to the Supreme Judicial Court by the S.J.C. Standing Advisory Committee on the Criminal Rules at 9-10 (May 9, 2003). A July 30, 2004, memorandum of the Chief Justice of the District Court regarding amendments to rule 3 (g) also states that the requirement for "a probable cause finding [by a clerk-magistrate] before a criminal complaint may be issued, even after an arrest . . . is a change from current law."

those complaints may then continue in the normal course. Whether probable cause has already been demonstrated, or whether the Commonwealth will ultimately succeed in demonstrating probable cause or in proving its case, are matters to be resolved in future proceedings.

b. *Conclusion.* The order of the single justice denying the Commonwealth's petition under G. L. c. 211, § 3, is reversed. The case is remanded to the county court where an order shall issue vacating the order of the District Court judge and directing the complaints to issue.

*So ordered.*