VICTORY DISTRIBUTORS, INC. *vs.* AYER DIVISION OF THE
DISTRICT COURT DEPARTMENT.

VICTORY DISTRIBUTORS, INC. *vs.* MARLBOROUGH DIVISION ·
OF THE DISTRICT COURT DEPARTMENT.

Suffolk. May 10, 2001. - September 19, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, SOSMAN, & CORDY, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Practice, Criminal,* Complaint, Issuance of process, Probable cause hearing. *Statute,* Construction. *District Court,* Probable cause hearing.

Petitions seeking orders compelling two District Courts to "[a]ccept, process, hold show cause hearings and decide on the merits" a private citizen's applications for criminal complaints were properly denied by a single justice of this court, where the petitioner exercised its right to file applications for the issuance of criminal complaints and received action on those applications by a clerk-magistrate in each District Court receiving them for filing purposes and thus accepting them [140-141], and where, given that the petitioner was not entitled to show cause hearings or to the issuance of criminal complaints, even though such complaints would be supported by probable cause, the petitioner could not demonstrate a violation of any substantive right by failure of the two District Courts to hold probable cause hearings or to issue criminal complaints [141-143].

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on February 17, 2000.

The cases were heard by *Francis X. Spina,* J.

*F. Joseph Gentili* for the plaintiff.

*Elizabeth Klein Frumkin,* Assistant Attorney General, for the defendant.

COWIN, J. Victory Distributors, Inc. (Victory), appeals from the decisions of a single justice of this court denying its two petitions under G. L. c. 211, § 3. Victory sought orders from the single justice compelling the Ayer Division of the District Court Department (Ayer court) and the Marlborough Division of the District Court Department (Marlborough court) to "[a]c-cept, process, hold show cause hearings and decide on the

merits" its applications for criminal complaints.[1] Although Victory alleges that the Ayer court and the Marlborough court refused to accept its applications, a clerk-magistrate in each court received the applications for filing purposes and thus "accepted" them. See discussion, *infra.* Essentially, then, Victory sought orders compelling the Ayer court and the Marlborough court to hold show cause hearings and issue criminal complaints, should probable cause support such complaints. The single justice denied Victory's requests, concluding that Victory was not entitled to relief as the actions of the Ayer court and the Marlborough court did not violate a substantive right.

Relief under G. L. c. 211, § 3, is available only in extraordinary circumstances. See *Montanino* v. *Boston*, 425 Mass. 1025, 1026 (1997). A party seeking review under G. L. c. 211, § 3, must demonstrate that his or her substantive rights have been violated and that there is no other adequate or effective avenue of relief. See *Bradford* v. *Knights*, 427 Mass. 748, 749 (1998), quoting *McGuinness* v. *Commonwealth*, 420 Mass. 495, 497 (1995). We will not disturb an order of a single justice denying relief under G. L. c. 211, § 3, unless there is an abuse of discretion or other error of law. See *Adoption of Iris*, 427 Mass. 582, 586 (1998), citing *Department of Mental Retardation* v. *Kendrew*, 418 Mass. 50, 53 (1994).

Victory was entitled to file applications for the issuance of criminal complaints, which it did, and to have the divisions of the District Court act on those applications, which they did. Victory was not entitled to show cause hearings or to favorable court action on such applications. Accordingly, we affirm the decisions of the single justice.

I

We summarize the facts from the undisputed documentary materials contained in the record. Victory, which owns and operates a chain of grocery stores, filed applications with the Ayer court and the Marlborough court at various times for criminal complaints against customers who had paid for their

---

[1]A private citizen may file an "application for a criminal complaint." A judge or a clerk-magistrate then decides whether to issue the complaint. See, e.g., *McAvoy* v. *Shufrin*, 401 Mass. 593, 598 n.5 (1988).

groceries with "bad" checks. It alleged that these customers had committed larceny by check under G. L. c. 266, § 37.

A

*The Ayer court.* Between April and August, 1999, Victory filed fifty applications for criminal complaints in the Ayer court. An assistant clerk-magistrate received the applications, and a hearing on each application was scheduled for September 23, 1999. On that date, a Victory representative appeared before a District Court judge in the Ayer court.[2] The judge said that he would not issue complaints on Victory's applications because the police, the district attorney's office, and the court lacked the resources necessary to pursue these matters. He stated that Victory was using the criminal justice system as a collection agency and that its recourse was the small claims session. On that same date, the assistant clerk-magistrate, authorized by the judge, noted on each of the fifty applications that no complaints would issue for the reasons given by the judge, and he referred Victory to the small claims department.[3]

B

*The Marlborough court.* On September 10, 1999, Victory filed two applications for criminal complaints in the Marlborough court. A clerk-magistrate notified Victory in writing that she could not "accept" these two applications because the banks on which the checks were drawn were located outside the court's district.[4] The clerk-magistrate indicated that venue was

[2]According to an affidavit submitted by Victory's representative, forty of the fifty persons named in Victory's applications had not been notified of the hearing date. The representative stated that when he reviewed the applications on September 24, 1999, the copy of the application that is to be sent to the person named in it was still attached to the original application.

[3]Victory's affidavit states that it filed an additional fifty-five applications with the Ayer court between October, 1999, and May, 2000, and that, as of May 10, 2000, it had not received a response from the Ayer court. Victory has not indicated whether any action was taken on the applications since May 10, 2000. The number of applications at issue and the fact that these applications may still be pending does not alter our decision in this case.

[4]Victory states in its brief (as it stated in its petition to the single justice) that the Marlborough court disposed of five earlier applications for the same reason, but copies of those five other applications were not included in the record. This does not affect our decision.

proper only in the district in which the drawee bank is located. This interpretation was wrong as a matter of law. See *infra.* Although the clerk-magistrate termed her action a refusal to "accept" Victory's applications, she did receive, and thus "accept," them for filing purposes. Her action effectively was a decision to deny the issuance of a complaint.

On September 22, 1999, Victory wrote a letter to a District Court judge in the Marlborough court informing the judge of the basis on which the clerk-magistrate had disposed of its applications and requesting that the judge "review" the applications. Victory did not request a hearing, and none was held. Cf. District Court Standards of Judicial Practice: The Complaint Procedures standard 3:21 (1975) ("If the clerk denies· an application and if the complainant manifests serious dissatisfaction, he should be told that he may request a new hearing before a judge of the court"). But see commentary to standard 3:21 ("A new hearing need not follow every denial of an Application. Indeed, the law does not specifically provide for a rehearing at all . . ."). According to Victory, the District Court judge did not respond to its letter. We consider the judge's silence as a denial of Victory's request for review and an implicit affirmation of the clerk-magistrate's decision denying Victory's applications.

One month later, Victory sent a letter to the Chief Justice for Administration and Management complaining about the applications it had filed in both the Ayer and Marlborough courts. An administrative attorney in that office responded that Victory was not a private person under Mass. R. Crim. P. 4 (b), 378 Mass. 849 (1979), and therefore was not authorized to file applications for the issuance of criminal complaints. See, in this regard, note 6, *infra.*

Victory then filed its petitions under G. L. c. 211, § 3, requesting the single justice to order the Ayer court and the Marlborough court to "[a]ccept, process, hold show cause hearings and decide on the merits" its applications for criminal complaints. The single justice denied the petitions. He held in each case that Victory was not entitled to relief "because it is 'a private citizen ha[ving] no judicially cognizable interest in the prosecution of another.' *Taylor* v. *Newton Div. of the Dist. Court Dep't,* 416 Mass. 1006 (1993)." The single justice also stated

that the Marlborough court clerk-magistrate's interpretation of the proper venue for the applications was "unduly restrictive" and that a "complaint under G. L. c. 266, § 37, may be brought in the judicial district where the goods were received in exchange for the bad check."[5]

## II

### A

Victory first contends that a private citizen[6] has a substantive right to file an application for a criminal complaint and that the Ayer and Marlborough courts violated this right by refusing to accept its applications. A private citizen does have a right to file an application for a criminal complaint with respect to misdemeanors, but neither the Ayer court nor the Marlborough court violated this right.

By enacting G. L. c. 218, § 35A, the Legislature acknowledged that a private citizen can file an application for the issuance of a criminal complaint for a misdemeanor.[7] See, e.g., *Bradford* v. *Knights*, 427 Mass. 748, 751 (1998), citing G. L. c. 218, § 35A ("the Legislature has allowed private parties to seek criminal complaints in the case of misdemeanors"). See also Mass. R. Crim. P. 4 (b) ("An application for issuance of [criminal complaints] may be subscribed by . . . a private person"). The statute provides that "[i]f a complaint for a misdemeanor is received," inter alia, by the District Court, the court shall notify the person against whom the complaint was made, give such person an opportunity to be heard, and "may upon consideration of the evidence cause [a complaint] to be issued." The provision "[i]f a complaint for a misdemeanor is received" assumes that a private citizen has the right to file an application for a criminal complaint for a misdemeanor. G. L. c. 218, § 35A. We interpret statutes so as to avoid rendering any part of the legislation meaningless. See, e.g., *Volin* v. *Board*

---

[5]The Attorney General, acting on behalf of the Ayer and Marlborough courts, does not contest this issue on appeal.

[6]Victory argues that it is a private citizen. Both the single justice and the Attorney General have assumed that Victory is a private citizen for purposes of this appeal, and there is no reason to conclude otherwise.

[7]There is no contention in these cases that the applications did not involve misdemeanors.

*of Pub. Accountancy,* 422 Mass. 175, 179 (1996), quoting *Adamowicz* v. *Ipswich,* 395 Mass. 757, 760 (1985). It follows that if a private citizen files an application for a criminal complaint, a clerk-magistrate cannot refuse to act on it. Cf. *Commonwealth* v. *Clerk of the Boston Div. of the Juvenile Court Dep't,* 432 Mass. 693, 695 (2000) (clerk-magistrate refused to grant or deny application for issuance of complaint).

In the present cases, neither the Ayer nor the Marlborough court refused to act on Victory's applications. Clerk-magistrates in both courts received Victory's applications for filing purposes, notwithstanding the Marlborough court clerk-magistrate's statement to the contrary. The District Court judge in the Ayer court declined to issue criminal complaints due to lack of resources, and the clerk-magistrate in the Marlborough court disposed of the applications believing venue was improper. In sum, Victory had a right to file applications for the issuance of criminal complaints, which it did. It also had a right to court action on those applications, which it received. Victory therefore obtained all to which it was entitled.

## B

Victory concedes, as it must, that a private citizen has no right to the issuance of a criminal complaint. Our prior decisions have held consistently that, if a judge or clerk-magistrate denies an application for a criminal complaint, a private party has no constitutional or statutory right to challenge that decision. See, e.g., *Bradford* v. *Knights, supra*; *Tarabolski* v. *Williams,* 419 Mass. 1001, 1001-1002 (1994); *Taylor* v. *Newton Div. of the Dist. Court Dep't, supra* at 1006; *Whitley* v. *Commonwealth,* 369 Mass. 961, 962 (1975). Nonetheless, Victory asserts that it has a right to a probable cause hearing on its applications before a judge or clerk-magistrate can deny such applications. The assertion is erroneous.

A private party's rights with respect to the criminal complaint process are limited to the filing of an application and court action on that application. Once a private party alerts the court of the alleged criminal activity through the filing of an application and the court responds to that application, the private party's rights have been satisfied. A probable cause hearing under G. L.

c. 218, § 35A, is held for the protection and benefit of the respondent named in the application, not for the benefit of the complainant. See G. L. c. 218, § 35A (if application for complaint is received, District Court shall give person *against whom complaint is made* opportunity to be heard in opposition to issuance of complaint).

Further, a judge or clerk-magistrate can decline to issue a criminal complaint even in cases such as the present ones where probable cause may exist to support the issuance of complaints. See G. L. c. 266, § 37 (drawee bank's refusal to make payment of check prima facie evidence of larceny by check). General-Laws c. 218, § 35A, provides that the District Court, or an officer thereof, "*may* upon consideration of the evidence cause [a complaint] to be issued" (emphasis added). Use of the word "may" is recognition that circumstances will exist when, notwithstanding the existence of probable cause, a complaint should not issue and that, in such circumstances, a clerk-magistrate has discretion to refuse to issue complaints. See commentary to standard 3:08 of the District Court Standards of Judicial Practice: The Complaint Procedure (1975) (recognizing that complex factors beyond the determination of probable cause affect clerk-magistrates' decisions regarding applications for criminal complaints). As we recognized in *Bradford* v. *Knights, supra* at 751, "[t]he right of a citizen to obtain a criminal complaint is itself something of an anomaly": the Legislature may have provided private parties a right to file an application for a criminal complaint, but "we have uniformly held that the denial of [an application for] a complaint creates no judicially cognizable wrong."

We recognize that our holding in this and prior decisions, that a private party suffers no judicially cognizable wrong when its application for a criminal complaint is denied, encompasses cases where an application is refused on the basis of an erroneous interpretation of the law, as was the situation in the Marlborough court. That possibility is implicit in the system of citizen complaints, and is consistent with the notion that the right to pursue a criminal prosecution belongs not to a private party but to the Commonwealth. See, e.g., *Tarabolski* v. *Williams, supra* at 1001-1002. A citizen complainant has no

substantive entitlements in this system, including no entitlement to a correct interpretation of the law, other than a right to court action on its application.

The discretion of judges and clerk-magistrates to decide whether to issue complaints is ancillary to the discretion of prosecuting authorities to decide whether to prosecute a particular case. See, e.g., *Commonwealth* v. *Taylor*, 428 Mass. 623, 629 (1999). If a judge or clerk-magistrate declines to issue a complaint, the private citizen may request the Attorney General or a district attorney to pursue the matter.[8] Should one of these authorities decide to prosecute, neither a judge of the District Court nor a clerk-magistrate may bar the prosecution, as long as the complaint is legally valid. See, e.g., *Commonwealth* v. *Quispe*, 433 Mass. 508, 511-512 & n.5 (2001).[9]

Because Victory is not entitled to show cause hearings or to the issuance of criminal complaints, even though such complaints would be supported by probable cause, Victory cannot demonstrate a violation of any substantive right by the failure of the Ayer Division and the Marlborough Division of the District Court Department to hold probable cause hearings or to issue criminal complaints.

*Judgments affirmed.*

---

[8]A private citizen also may seek relief through civil process. See, e.g., *Manning* v. *Municipal Court of the Roxbury Dist.*, 372 Mass. 315, 317 (1977); *Whitley* v. *Commonwealth*, *supra*. Victory argues that the fact that it can pursue a civil remedy "is not grounds to deny Victory its day in court for the criminal conduct of people who defraud it by obtaining products by means of worthless checks." Victory overlooks the fact that no constitutional or statutory provision entitles it to "a day" in *criminal* court; it is only entitled to a day in *civil* court.

[9]The Attorney General or a district attorney may decide not to prosecute. Such decision rests in the executive branch. See, e.g., *Commonwealth* v. *Clerk of the Boston Div. of the Juvenile Court Dep't*, 432 Mass. 693, 700 (2000); *Commonwealth* v. *Taylor*, 428 Mass. 623, 629 (1999); *Commonwealth* v. *Gordon*, 410 Mass. 498, 500-501 (1991).