NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12404


COMMONWEALTH  vs.  BERNIE RUIZ.



Suffolk.     May 7, 2018. - October 11, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, & Cypher, JJ.


Habitual Offender.  Practice, Criminal, Appeal by Commonwealth,
     Interlocutory appeal.



Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on January 10, 2017.

The case was heard by Lenk, J.


David L. Sheppard-Brick, Assistant District Attorney, for
the Commonwealth.
Patrick A. Michaud for the respondent.


BUDD, J.  Once again we have occasion to interpret G. L.

c. 279, § 25 (a) (§ 25 [a]), which requires that a "habitual

criminal" -- a defendant who has been convicted of a felony and

has two prior convictions resulting in State or Federal prison

sentences of three years or more -- be sentenced to the maximum

term provided by law on the underlying conviction.  We conclude

that, although the predicate convictions must arise from separate incidents or episodes, Commonwealth v. Garvey, 477 Mass. 59, 66 (2017), the offenses need not be separately prosecuted. We further conclude that Mass. R. Crim. P. 15 (a) (1), as appearing in 474 Mass. 1501 (2016) (rule 15 [a] [1]), and G. L. c. 278, § 28E (§ 28E), grant the Commonwealth a right to appeal from the dismissal of the sentence enhancement portion of an indictment, and thus we overrule in part Commonwealth v. Pelletier, 449 Mass. 392, 395-396 (2007).

Background. In March, 2016, a grand jury returned eleven indictments against the defendant for a variety of charges, including armed assault with intent to murder, in connection with an incident alleged to have occurred on February 17, 2016.[1] All but two of these indictments carried sentencing enhancements under § 25 (a).

---

[1] The details regarding the basis of the defendant's indictments are contained in grand jury testimony filed and maintained under seal pursuant to G. L. c. 268, § 13D (e). The defendant was charged on two indictments of armed assault with intent to murder, G. L. c. 265, § 18 (b); three indictments of assault by means of a dangerous weapon, G. L. c. 265, § 15B; one indictment of unlawful possession of a firearm, G. L. c. 269, § 10 (a); one indictment of unlawful possession of a loaded firearm, sawed off shotgun, or machine gun, G. L. c. 269, § 10 (n); one indictment of unlawful possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (h); one indictment of discharging a firearm within 500 feet of a dwelling, G. L. c. 269, § 12E; one indictment of possession of a firearm during the commission of a felony, G. L. c. 265, § 18B; and one indictment of malicious damage to a motor vehicle, G. L. c. 266, § 28 (a).

The predicate convictions supporting the habitual criminal portions of the indictments were the result of guilty pleas tendered by the defendant in 2008.  The defendant pleaded guilty to separate charges of assault and battery by means of a dangerous weapon arising from two separate criminal episodes, which occurred in August and September of 2006.

In 2008, the defendant was indicted for both offenses by the same grand jury and pleaded guilty to both charges in one proceeding.  The defendant was sentenced to a term of from four to six years in State prison on each charge of assault and battery by means of a dangerous weapon, each sentence set to run concurrently.[2]

Because the judge below concluded that the defendant's predicate convictions represented a single "incident" under § 25 (a), he allowed the defendant's motion to dismiss the § 25 (a) sentence enhancement charges associated with the March, 2016, indictments.[3]  The Commonwealth filed a timely notice of

---

[2] The defendant also pleaded guilty to other charges during the aforementioned 2008 proceeding that are not relevant to our analysis in this case.

[3] The defendant also was indicted in October, 2014, for a number of other criminal offenses.  Several of the 2014 and 2016 charges carried sentence enhancements pursuant to the armed career criminal act, G. L. c. 269, § 10G (c).  The motion judge granted the defendant's motion to dismiss these sentence enhancement charges; the Commonwealth did not appeal from those dismissals.  See Commonwealth v. Resende, 474 Mass. 455, 470

appeal in the Superior Court, but the Superior Court clerk's office would not compile a record for appeal under rule 15 (a) (1) in light of our decision in Pelletier, 449 Mass. at 396, in which we held that the Commonwealth may not take an interlocutory appeal from the dismissal of only the sentence enhancement portion of a complaint.  Thereafter, the Commonwealth filed a petition for relief pursuant to G. L. c. 211, § 3.  A single justice of this court denied the Commonwealth's petition, and the Commonwealth appealed to the full court.

Discussion.  1.  Applicability of G. L. c. 279, § 25 (a). In reviewing the single justice's determination to deny the Commonwealth's petition brought under G. L. c. 211, § 3, this court looks to whether "the single justice abused his or her discretion or made a clear error of law."  Rogan v. Commonwealth, 415 Mass. 376, 378 (1993).  Here, the Commonwealth asserts an error of law.  Matter of a Grand Jury Subpoena, 447 Mass. 88, 90 (2006).  Because the question for review is a matter of statutory interpretation, we review it de novo. Garvey, 477 Mass. at 61.

General Laws c. 279, § 25 (a), provides:

---

(2016).  The Commonwealth exercised its authority to enter a nolle prosequi on the 2014 charges in May, 2017.

> "Whoever is convicted of a felony and has been previously twice convicted and sentenced to [S]tate prison or [S]tate correctional facility or a [F]ederal corrections facility for a term not less than [three] years . . . shall be considered a habitual criminal and shall be punished . . . for such felony for the maximum term provided by law."

The statute requires that a defendant be sentenced to the maximum sentence if found guilty of the underlying felony provided that he or she has at least two qualifying prior convictions; however, § 25 (a) does not indicate whether those predicate convictions must have stemmed from separate prosecutions and sentencings.

The defendant argues that the judge properly dismissed the sentence enhancements because, as he pleaded guilty to a set of charges that were combined and prosecuted together, the convictions cannot be counted separately for the purposes of § 25 (a). Conversely, the Commonwealth contends that § 25 (a) does not require that the predicate convictions arise from charges separately prosecuted. See Commonwealth v. Hall, 397 Mass. 466, 468-469 (1986) (defendant may be convicted under statute where two predicate convictions arise out of unrelated incidents disposed of on same date with identical concurrent sentences).

As the statute is "simply silent" on this matter, "we consider that section in the context of the over-all objective the Legislature sought to accomplish." National Lumber Co. v.

LeFrancois Constr. Corp., 430 Mass. 663, 667 (2000).  Our review of § 25 (a)'s historical development supports the conclusion that the legislative objective of § 25 (a) is to punish all offenders who have prior convictions stemming from two or more separate and distinct criminal episodes, and that the Legislature specifically rejected the requirement of separate and sequential prosecutions for predicate offenses.

The "Legislature developed a series of incarnations of repeat offender statutes, beginning in 1818, before enacting what is now § 25 (a)."  Garvey, 477 Mass. at 62.[4]  In Commonwealth v. Phillips, 11 Pick. 28, 34 (1831), this court concluded that, under the 1818 incarnation of the statute (which was also silent as to whether charges or indictments must have been separately prosecuted to count as individual convictions), two predicate convictions associated with two prior distinct criminal episodes that were brought and tried during the same term of the same court were "two convictions, within the meaning of the statute."  See Ex Parte Seymour, 14 Pick. 40, 40-41 (1833) (period of liberty between predicate convictions not required).

---

[4] See St. 1817, c. 176, §§ 5-6; St. 1827, c. 118, §§ 19-20; St. 1832, c. 73, § 1; St. 1833, c. 85, §§ 1-2; St. 1836, c. 4, §§ 17, 20-22; St. 1843, c. 80; St. 1853, c. 375 (repealing statute); St. 1887, c. 435, § 1; St. 2012, c. 192, § 47.

In the following year, the Legislature amended the statute, superseding this court's opinion in Phillips by expressly requiring that there should be two separate convictions and sentences, and two distinct discharges from prison, to bring a defendant within the scope of the statute. See St. 1832, c. 73, § 1.[5] See also St. 1833, c. 85, §§ 1-2 (reenacting statute with substantiality of 1832 requirements);[6] Phillips v. Commonwealth, 3 Met. 588, 591 (1842) (1831 interpretation "probably gave rise to the statute passed at the next session of the legislature"); Commonwealth v. Mott, 21 Pick. 492, 500 (1839) ("One great object of the [1832] statute undoubtedly was, to declare that by two convictions, should thereafter be understood, sentences and commitments at two distinct times and discharges therefrom . . . instead of two sentences at the same term of a court"); Ex Parte

---

[5] The 1832 statute specifically required proof that a convict subject to the statute "has at two several times before been sentenced by competent authority to [prison]." (emphasis added). St. 1832, c. 73, § 1. At the time, "several" was defined as "[a] state of separation or partition. A several agreement or covenant, is one entered into by two or more persons separately, each binding himself for the whole; a several action is one in which two or more persons are separately charged; a several inheritance, is one conveyed so as to descend, or come to two persons separately by moieties. Several is usually opposed to joint." 2 Bouvier's Law Dictionary 394 (1st. ed. 1839).

[6] The 1833 statute was reenacted with the express requirement of two distinct discharges from prison for predicate offenses, but without the express requirement of two several convictions contained in the 1832 statute. See St. 1832, c. 73, § 1; St. 1833, c. 85, §§ 1-2.

Stevens, 14 Pick. 94, 96 (1833) (explaining intent and purpose of 1832 statute); Ex Parte Seymour, 14 Pick. at 41 note (noting that statutory revision added requirement that charges be sequential).

In 1836, however, the Legislature again amended the repeat offender statute, eliminating the requirements that had been added in 1832 requiring separate convictions and a period of liberty between the imprisonment for one offense and the commission of the next.  St. 1836, c. 4, §§ 17, 20.[7]  Although the Legislature repealed the repeat offender statute in 1853, see St. 1853, c. 375, it enacted a version substantially similar to the earliest version of the statute in 1887, again omitting the 1832 requirements that predicate offenses occur as a result of separate convictions and occur with a period of liberty between them.  St. 1887, c. 435, § 1.  We have concluded that the Legislature's modifications to the statutory requirements of what is now § 25 (a) in light of our decisions are highly

---

[7] Although the 1833 statute appears to have eliminated the express requirement of separate convictions and sentences for predicate offenses, separate convictions would have still been implicit in the requirement that there be two discharges from prison.  The express requirement of separate convictions was nonetheless included in the codification of the statute in 1835. See St. 1833, c. 85, §§ 1-2; R.S. c. 133, § 13; R.S. c. 144, § 34.  In any case, the 1836 statute expressly repealed the requirement of separate convictions and two discharges from prison that were included in the revised statutes.  See St. 1836, c. 4, §§ 17, 20.

germane to determining its intent.  See <u>Commonwealth</u> v.

<u>Richardson</u>, 175 Mass. 202, 207 (1900).

The Legislature's decision to enact a statute expressly requiring separate prosecutions of predicate offenses with a period of liberty between those prosecutions, followed by the repeal and replacement of that statute with a version that does <u>not</u> contain those requirements, "reflect[s] a conscious decision by the Legislature to deviate from the standard embodied in the [previous] statute."  <u>Commonwealth</u> v. <u>Resende</u>, 474 Mass. 455, 466 (2016), quoting <u>Globe Newspaper Co</u>. v. <u>Boston Retirement Bd</u>., 388 Mass. 427, 433 (1983).  Thus, here the Legislature has rejected the theory that more severe punishment is only appropriate when there have been two separate and distinct encounters with the criminal justice system that have failed to result in the theoretically beneficial effects of penal discipline.  See <u>Kirtsaeng</u> v. <u>John Wiley & Sons, Inc</u>., 568 U.S. 519, 533-535 (2013) (examining statutory history to determine statute's meaning).

In 2012, the Legislature reenacted § 25 (<u>a</u>) as part of criminal justice reform legislation, also inserting new subsections removing the possibility of parole for "habitual

offenders"[8] of particular offenses enumerated in the statute.

G. L. c. 279, § 25 (b)-(d), inserted by St. 2012, c. 192, § 47.

Under those newly inserted provisions, unlike in § 25 (a), the

Legislature expressly required that predicate offenses have been

"separately brought and tried."  See G. L. c. 279, § 25 (b)

(§ 25 [b]).  That the Legislature reenacted the same statute in

2012 without including the requirement that the predicate

offenses be separately brought and tried under § 25 (a), yet

included that requirement under § 25 (b), provides further

support that the Legislature did not intend to modify prior

assumptions about this statute to include this requirement.[9]  See

People v. Braswell, 103 Cal. App. 399, 407-408 (1930) (where

Legislature required predicate convictions to be "separately

_____

[8] After the 2012 amendments, certain individuals statutorily identified as "habitual criminals" are subject to the provisions of subsection (a) and certain individuals statutorily identified as "habitual offenders" are subject to the provisions of subsection (b).  See G. L. c. 289, § 25, as appearing in St. 2012, c. 192, § 47.

[9] In Commonwealth v. Garvey, 477 Mass. 59, 65-66 (2017), we rejected the Commonwealth's argument that the Legislature's decision to include an express "separate and distinct incident" element in G. L. c. 279, § 25 (b), implied its exclusion in G. L. c. 279, § 25 (a) (§ 25 [a]).  However, our conclusions both here and in Garvey contemplate that by reenacting § 25 (a) without making any significant modifications, the Legislature did not intend to "negate this court's . . . prior assumptions about § 25 (a)."  Id. at 66.  Based on the statutory history and our case law, the prior assumption here is that the Legislature did not require predicate offenses to be separately brought and tried.

brought and tried" for one sentence enhancement scheme but not
another, "legislature may have considered . . . prior
convictions [in latter scheme] to have been sufficient to have
constituted a man a[] habitual criminal, whether or not they
were upon charges separately brought and tried").  See also
Commonwealth v. Wimer, 480 Mass. 1, 5 (2018) (interpreting
statutory language requiring sequential convictions).

The defendant suggests that we should construe § 25 (a)
consistently with our interpretation of G. L. c. 269, § 10G
(§ 10G), the armed career criminal act.  That statute also
requires sentence enhancements under particular conditions, and
is similarly silent as to whether the prior convictions must
have stemmed from separate prosecutions and sentences.[10]  In

---

[10] General Laws c. 269, § 10G, provides in relevant part:

"(a) Whoever, having been previously convicted of a violent
crime or of a serious drug offense, both as defined herein,
violates the provisions of paragraph (a), (c) or (h) of
[§] 10 shall be punished by imprisonment in the [S]tate
prison for not less than three years nor more than
[fifteen] years.

"(b) Whoever, having been previously convicted of two
violent crimes, or two serious drug offenses or one violent
crime and one serious drug offense, arising from separate
incidences, violates the provisions of said paragraph (a),
(c) or (h) of said [§] 10 shall be punished by imprisonment
in the [S]tate prison for not less than ten years nor more
than [fifteen] years.

"(c) Whoever, having been previously convicted of three
violent crimes or three serious drug offenses, or any

Resende, 474 Mass. at 469, we concluded that § 10G requires separate and sequential prosecutions in order to count prior convictions individually; however, § 25 (a) and § 10G stand on very different footing.

Section 10G, the Massachusetts analog to the Federal armed career criminal act, 18 U.S.C. § 924(e), was enacted relatively recently (in 1998), and its legislative roots are not nearly as extensive as those of § 25 (a).  See St. 1998, c. 180, § 71, inserting G. L. c. 269, § 10G.  As we noted in Resende, the legislative history of § 10G is not particularly helpful on the issue whether the statute requires each previous conviction to be separately prosecuted to count as a predicate offense.  Id. at 463-464.  Instead we looked to "the Legislature's departure from the language used in the Federal [statute],[11] the analysis of cases from other jurisdictions, and the rule of lenity" to determine that § 10G requires separate and sequential prosecutions of predicate offenses.  Id. at 464.

combination thereof totaling three, arising from separate incidences, violates the provisions of said paragraph (a), (c) or (h) of said [§] 10 shall be punished by imprisonment in the [S]tate prison for not less than [fifteen] years nor more than [twenty] years."

[11] We noted that the Legislature chose to depart from language in the Federal statute in its description of what makes a violent crime a predicate offense.  Resende, 474 Mass. at 464-465 (comparing "incidences" in Massachusetts statute with "committed on occasions different from one another" in Federal statute).

In contrast, the purpose of § 25 (a), as made clear from the statutory history, is to punish all repeat offenders, and to require prior convictions merely as proof of guilt of prior crimes rather than proof that a defendant's prior penal treatment has not been effective at reforming a criminal offender.[12]  See Richardson, 175 Mass. at 207 (describing statute's purpose); Ex Parte Seymour, 14 Pick. at 41-42 (same). See also Mott, 21 Pick. at 498 (purpose of period of liberty in 1833 statute was to ensure sentence enhancement occurs only "after the salutatory and reforming influence of two separate commitments to the penitentiary, and two discharges therefrom by pardon or execution of the whole sentence, had been tried in vain").

The Commonwealth's sentence enhancement statutes vary in language, structure, and intent.[13]  Here, a review of the statutory history of what is now § 25 (a) confirms that predicate convictions arising from separate qualifying criminal

---

[12] A similar understanding of this statute, and how its purposes may differ from other repeat offender statutes with sentence enhancements in this and other States may be found in Note, Habitual Criminal Statutes:  The Requirement of Prior Convictions, 51 Harv. L. Rev. 345, 345-346 (1937).

[13] There are many sentence enhancement statutes.  See, e.g., G. L. c. 279, § 8B (commission of crime while released on personal recognizance); G. L. c. 269, § 10 (firearm offenses); G. L. c. 266, § 40 (common and notorious thief); G. L. c. 94C, §§ 32-32E (drug offenses); G. L. c. 90, § 24 (driving while under influence).

incidents or episodes need not be separately prosecuted in order for a person to be considered a habitual criminal pursuant to § 25 (a).  Hall, 397 Mass. at 468-469.

2.  Right of appeal.  As discussed supra, when the Commonwealth sought to appeal from the dismissal of the sentence enhancement portions of the indictments, the Superior Court clerk's office indicated that it would take no action without an order from the county court.

Together, § 28E[14] and rule 15 (a) (1)[15] establish the right of the Commonwealth to appeal from the decision of a judge granting a motion to dismiss an indictment or complaint (among other things).  However, neither the statute nor the rule specifies whether the Commonwealth may appeal from the dismissal

---

[14] General Laws c. 278, § 28E (§ 28E), permits the Commonwealth to appeal from "a decision, order or judgment" of a judge in the Superior Court to the Appeals Court in three circumstances:  (1) where the judge "allow[s] a motion to dismiss an indictment or complaint," (2) where the judge "allow[s] a motion for appropriate relief under the Massachusetts Rules of Criminal Procedure," and (3) provided that a single justice of this court grants an application for leave to appeal, where the judge "determine[s] a motion to suppress evidence prior to trial."  See Commonwealth v. Friend, 393 Mass. 310, 314 (1984) (notwithstanding text in § 28E, "an appeal by the Commonwealth from an order or decision dismissing an indictment in the Superior Court must first be entered in the Appeals Court").

[15] Rule 15 (a) (1) of the Massachusetts Rules of Criminal Procedure (rule 15 [a] [1]), which implements § 28E, provides: "The Commonwealth shall have the right to appeal to the Appeals Court a decision by a judge granting a motion to dismiss a complaint or indictment . . . ."

of a portion of an indictment (e.g., a sentence enhancement) as opposed to the dismissal of an indictment in its entirety.

In Pelletier, 449 Mass. at 395-396, we determined that the Commonwealth may not proceed as a matter of right under § 28E and rule 15 (a) (1) where it seeks to appeal from only the dismissal of subsequent offense charges. Pelletier involved a charge of operating a motor vehicle while under the influence of intoxicating liquor, third offense, under G. L. c. 90, § 24 (1) (a) (1). Pelletier, supra at 393. The Commonwealth filed a petition pursuant to G. L. c. 211, § 3, seeking review of a judge's decision to sentence the defendant as a first-time offender despite the subsequent offense portion of the indictment. Id. at 394.

In concluding that the G. L. c. 211, § 3, petition was proper,[16] we stated that it was "uncertain" whether the Commonwealth could have appealed the trial judge's ruling pursuant to § 28E and rule 15 (a) (1). Id. at 395. Next, we noted that the subsequent offense portion of a charge "does not create an independent crime," that it "concerns only the

_____

[16] "Relief under G. L. c. 211, § 3, is available only in extraordinary circumstances." Jaynes v. Commonwealth, 436 Mass. 1010, 1011 (2002), quoting Victory Distribs., Inc. v. Ayer Div. of the Dist. Court Dep't, 435 Mass. 136, 137 (2001). "It is not available where the petitioning party has or had 'adequate and effective avenues other than G. L. c. 211, § 3, by which to seek and obtain the requested relief.'" Jaynes, supra, quoting Lanoue v. Commonwealth, 427 Mass. 1014, 1015 (1998).

punishment to be imposed if a defendant is convicted of the underlying crime and the prior offenses are proved," and that "[t]he defendant's sentence on the underlying charge in the complaint is . . . 'inextricably bound' with the plea judge's treatment of the subsequent offense portion of the complaint" (citations omitted). Id. at 395-396. We then concluded that "an appeal from a 'dismissal' of only that portion of the complaint charging a subsequent offense may not lie." Id. at 396.

The Commonwealth argues that this holding is incorrect.[17] It contends that, because rule 15 (a) (1) is the only procedural mechanism by which the Commonwealth may appeal from a dismissal, prohibiting the appeal from the dismissal of subsequent offense charges undermines the purpose of § 28E. In revisiting the matter, we agree with the Commonwealth and conclude that, notwithstanding the reasoning in Pelletier, the Commonwealth may take an appeal from the dismissal of the sentence enhancement portion of an indictment pursuant to § 28E by way of rule 15 (a) (1).

---

[17] Because the Commonwealth is able to obtain relief under G. L. c. 211, § 3, in this case, the question whether it should be allowed to proceed pursuant to rule 15 (a) (1) is moot. Nevertheless, we address the question because "the situation presented is 'capable of repetition, yet evading review.'" Boelter v. Selectmen of Wayland, 479 Mass. 233, 238 (2018), quoting Seney v. Morhy, 467 Mass. 58, 61 (2014).

We have highlighted the important jurisprudential interests served generally by a right to appeal, including consistent treatment of similar cases and the orderly development of a body of law. See Burke v. Commonwealth, 373 Mass. 157, 160 (1977). Appellate review also ensures the proper administration of justice in individual cases. See, e.g., Swift v. American Mut. Ins. Co. of Boston, 399 Mass. 373, 375 n.5 (1987).

These interests apply with equal force not only to a review of the proceedings once a trial has concluded, but also to the review of pretrial decisions that terminate criminal proceedings prior to a trial being held. An appeal from a trial judge's dismissal of an indictment pursuant to § 28E and rule 15 (a) (1) "allow[s] the Commonwealth to reinstitute proceedings terminated because of an incorrect ruling in the trial court, . . . but, on the other hand, . . . allow[s] [appellate courts] to affirm preliminary rulings which, in effect, put an end to a particular prosecution." Burke, 373 Mass. at 160. The absence of a mechanism to appeal from a decision that terminates a criminal proceeding could "leave a class of cases, many of which involve serious crimes, lost either to further prosecution or any appellate review." Id.

A sentence enhancement charge cannot be brought alone; instead, it must accompany a substantive criminal charge. See Bynum v. Commonwealth, 429 Mass. 705, 709-710 (1999). However,

like the underlying felony charges they accompany, sentence enhancements must be included in charging documents and voted on by a grand jury.  See G. L. c. 278, § 11A.  See also Commonwealth v. Miranda, 441 Mass. 783, 789 (2004) (indictments including repeat offender charges must adequately notify defendant of crime charged and jeopardy faced); Commonwealth v. Fernandes, 430 Mass. 517, 521-522 (1999), cert. denied, 530 U.S. 1281 (2000) (repeat offender component should appear in indictment).  Subsequent offense charges are prosecuted in a separate proceeding, only if and after the defendant has been convicted of the underlying substantive offense.  G. L. c. 278, § 11A.[18]  Thus, when a judge dismisses the sentence enhancement portion of an indictment, he or she is terminating that

---

[18] General Laws c. 278, § 11A, provides that when a defendant is charged with being a repeat offender, his or her guilt as to the underlying charge is first determined,

> "then before sentence is imposed, the defendant shall be further inquired of for a plea of guilty or not guilty to that portion of the complaint or indictment alleging that the crime charged is a second or subsequent offense.  If he pleads guilty thereto, sentence shall be imposed; if he pleads not guilty thereto, he shall be entitled to a trial by jury of the issue of conviction of a prior offense, subject to all of the provisions of law governing criminal trials. . . .  The court may, in its discretion, either hold the jury which returned the verdict of guilty of the crime, the trial of which was just completed, or it may order the impanelling of a new jury to try the issue of conviction of one or more prior offenses.  Upon the return of a verdict, after the separate trial of the issue of conviction of one or more prior offenses, the court shall impose the sentence appropriate to said verdict."

particular proceeding.  See Pelletier, 449 Mass. at 396 (G. L.
c. 278, § 11A, requires defendants charged with sentence
enhancements "to be tried in a two-step, bifurcated procedure").
See also Miranda, 441 Mass. at 788 (§ 11A requires defendant "to
be tried . . . first, on the underlying substantive crime and,
then, in a separate proceeding, on that component of the charge
referring to the crime as a second or subsequent offense").

Because an unrestrained right to pretrial appeals by the
Commonwealth may be burdensome on defendants (and the courts),
G. L. c. 278, § 28E, limits such appeals to circumstances in
which the trial judge's decision forecloses the Commonwealth's
opportunity to go forward with the prosecution altogether.
Burke, 373 Mass. at 160.  See Commonwealth v. Cavanaugh, 366
Mass. 277, 279 (1974) ("interlocutory appeals and reports should
not be permitted to become additional causes of the delays in
criminal trials which are already too prevalent").[19]  As a motion
judge who grants a motion dismissing the subsequent offense
portion of a charge terminates a separate proceeding

---

[19] Section 28E expressly authorizes the Commonwealth to
appeal from certain interlocutory decisions granting motions to
suppress, as such decisions "so often . . . in practical effect,
terminate the proceedings."  Commonwealth v. Yelle, 390 Mass.
678, 685 (1984).  See Commonwealth v. Anderson, 401 Mass. 133,
135 (1987) (decisions excluding Commonwealth's evidence only
appealable under Mass. R. Crim. P. 15 "if, as a practical
matter, that ruling [if permitted to stand] would terminate the
prosecution").

adjudicating the issue of conviction of prior offenses that was included in an indictment, there is no reason that an appeal should not lie under § 28E.  See G. L. c. 278, §§ 11A, 28E.  If the Commonwealth is denied the ability to seek an appeal from the dismissal of subsequent offense charges, those charges might be "lost either to further prosecution or any appellate review."[20]  Burke, 373 Mass. at 160.

Finally, the right to appeal from decisions interpreting these statutes helps to ensure that they are enforced uniformly, and that the Legislature's penological goals are realized.[21]

"Adherence to the principle of stare decisis provides continuity and predictability in the law, but the principle is not absolute.  No court is infallible, and this court is not barred from departing from previous pronouncements if the

---

[20] The Commonwealth has sometimes been successful obtaining review of the dismissal of sentence enhancement portions of indictments under G. L. c. 211, § 3, as in this case.  We note, however, that "[o]ur general superintendence power under G. L. c. 211, § 3, is extraordinary and to be exercised sparingly, not as a substitute for the normal appellate process or merely to provide an additional layer of appellate review after the normal process has run its course."  Scott v. Attorney Gen., 448 Mass. 1002, 1003 (2006), quoting Scott v. District Attorney for the Norfolk Dist., 445 Mass. 1022, 1022 (2005).  For that reason, it does not provide the right of appeal that the Commonwealth is entitled to under § 28E and rule 15 (a) (1).

[21] As pointed out in the concurrence, many sentence enhancement statutes, such as this one, are indeed harsh; but, unless constitutionally infirm, it is the duty of the judicial branch to interpret statutes passed by the Legislature, no more and no less.

benefits of so doing outweigh the values underlying stare decisis." Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 562, cert. denied sub nom. Wilfert Bros. Realty Co. v. Massachusetts Comm'n Against Discrimination, 543 U.S. 979 (2004). See Pearson v. Callahan, 555 U.S. 223, 233 (2009) (considerations in favor of stare decisis are at nadir in cases involving procedural rules). Although we concluded otherwise in Pelletier, we now conclude that § 28E and rule 15 (a) (1) permit an appeal as of right from a dismissal of sentence enhancement charges.[22]

One additional consideration merits discussion. The Commonwealth's inability to review the dismissal of habitual criminal portions of indictments under Mass. R. Crim. P. 15, yet ability to obtain review under G. L. c. 211, § 3, as in this case, undermines the intent of Mass. R. Crim. P. 15 (d), which "authorize[s] awards of appellate fees and costs to defendants in those situations where the Commonwealth is entitled to appeal, or seek leave to appeal, from trial court rulings in a defendant's favor." Commonwealth v. Augustine, 470 Mass. 837,

---

[22] Because we conclude that a motion to dismiss an indictment or complaint includes the portion of the indictment related to a sentence enhancement, we need not consider the scope of the meaning of the words "allowing a motion for appropriate relief under the Massachusetts Rules of Criminal Procedure" in G. L. c. 278, § 28E. See Commonwealth v. Therrien, 383 Mass. 529, 533 (1981).

840 (2015), quoting Commonwealth v. Phinney, 448 Mass. 621, 622 (2007). The purpose of this rule is "'to equalize the resources of the defendant with those of the Commonwealth' in cases where a defendant does not have court-appointed counsel but is forced to defend against a Commonwealth appeal; and to prevent a defendant's privately retained counsel from being placed 'in the untenable position of either volunteering his services on appeal or abandoning the defendant.'" Augustine, supra, quoting Phinney, supra at 622 n.2. See Gonsalves, 432 Mass. at 616-617 (discussing at length origin and purposes of rule 15 [d]). Where the Commonwealth seeks review under G. L. c. 211, § 3, there is no appeal under rule 15, but instead a collateral proceeding in the county court. Therefore, the defendant is not entitled to reimbursement for costs and attorney's fees associated with defending the Commonwealth's claim. See Commonwealth v. Shaughessy, 455 Mass. 346, 353 (2009). In cases involving the dismissal of sentence enhancement charges, we do not believe that this result is consistent with the intent of rule 15 (d).

3. Timeliness of Commonwealth's G. L. c. 211, § 3, petition. The defendant contends that the single justice abused her discretion by failing to deny the Commonwealth's motion to enlarge the time to file a petition under G. L. c. 211, § 3. This argument has no merit. The Commonwealth's application was

based on the erroneous concern that the time limits of Mass. R. A. P. 4, as amended, 430 Mass. 1603 (1999), apply generally to superintendence petitions filed before a single justice of this court under G. L. c. 211, § 3.  Because such a petition is not an appeal governed by the rules of appellate procedure, the time limits set forth in rule 4 of those rules do not apply.  See Mass. R. A. P. 1 (a), 365 Mass. 844 (1974) (defining scope of rules as applying to "procedure in appeals to an appellate court").  Although there may be circumstances in which a single justice might deny such a petition as untimely, the decision would not be governed by rule 4.  The single justice did not abuse her discretion in considering the Commonwealth's petition in this case.

Conclusion.  For the foregoing reasons, the judgment of the single justice is vacated, and the case is remanded to the county court for entry of an appropriate order by the single justice consistent with this opinion.

So ordered.

GANTS, C.J. (concurring, with whom Lowy, J., joins). I agree with the court that, given the legislative evolution of the habitual criminal statute, G. L. c. 279, § 25 (a), we can discern that the Legislature did not intend to require the separate prosecution of predicate offenses, and that we must respect that legislative intent. I write separately only to make a few observations that suggest that § 25 (a) warrants revisiting by the Legislature.

First, the legislative intent that we effectuate today is that of the Legislature in 1887. As the court explains, the Legislature that year chose to reenact a version of the habitual criminal statute that did not require the separate prosecution of predicate offenses, as opposed to an earlier version that did include that requirement, thus reflecting a "conscious decision" not to require separate prosecutions. Ante at   , quoting Commonwealth v. Resende, 474 Mass. 455, 466 (2016). This decision has remained undisturbed since then, even though our understanding of what is wise and just in a criminal justice system has changed dramatically in the past 131 years. In 1887, the punishment for a capital offense entailed "hanging the convict by the neck until he is dead." Pub. St. 1882, c. 215, § 37. Those convicted of an offense punishable by imprisonment could be sentenced to solitary confinement -- in which case they would be fed "bread and water only" -- and hard labor. See Pub.

St. 1882, c. 215, § 3; Pub. St. 1882, c. 220, § 39; Pub. St. 1882, c. 221, § 29.  Needless to say, attitudes about crime and punishment have changed significantly since then.

Second, the sanction imposed by the habitual criminal statute has become considerably more severe:  whereas the 1887 statute provided that habitual criminals "shall be punished by imprisonment . . . for twenty-five years," St. 1887, c. 435, § 1, the current statute provides that they "shall be punished by imprisonment . . . for the maximum term provided by law." G. L. c. 279, § 25 (a).  For many offenses, the maximum term provided by law is life.  See, e.g., G. L. c. 265, § 17 (armed robbery); G. L. c. 265, § 18A (armed assault in dwelling); G. L. c. 265, § 18C (armed home invasion); G. L. c. 266, § 14 (armed or assaultive burglary).  This means that a habitual criminal who in 1887 would have faced twenty-five years of imprisonment could today face the far harsher punishment of imprisonment for life.

Third, significant changes in other sentencing laws have caused the habitual criminal statute to operate more harshly today than it has in the past.  For example, in 1993 the Legislature enacted the so-called Truth in Sentencing Act, St. 1993, c. 432, which modified sentencing laws in Massachusetts such that, among other things, prisoners could no longer obtain early release as a result of statutory good time,

St. 1993, c. 432, § 10, and judges no longer had the option of imposing "reformatory" sentences (commonly referred to as "Concord" sentences).[1] St. 1993, c. 432, §§ 14-15, 17-20. See Commonwealth v. Russo, 421 Mass. 317, 319 n.2 (1995). In addition, in 2012 the Legislature amended the law governing parole eligibility for habitual criminals; habitual criminals are now eligible for parole only upon serving two-thirds of their maximum sentence, G. L. c. 127, § 133B, as opposed to one-half of their maximum sentence, as had been the case under prior law. Compare St. 2012, c. 192, § 40, with St. 1955, c. 770, § 70. As a result of these changes, habitual criminals who may in the past have had an opportunity to obtain early release

---

[1] Prior to its abolition, the "Concord" sentence was "a sentencing option widely used by Superior Court judges in the 1980's." Commonwealth v. Thurston, 53 Mass. App. Ct. 548, 554 (2002). Defendants who received Concord sentences -- typically those who were "deemed capable of rehabilitation" -- would be sentenced not to State prison at the Massachusetts Correctional Institution (M.C.I.) at Walpole (now M.C.I., Cedar Junction) but to M.C.I., Concord (for male defendants) or M.C.I., Framingham (for female defendants). Id. at 555. These defendants would receive apparently long sentences, ranging up to the maximum term provided by law, but would become eligible for parole after serving only "a small fraction . . . of the stated sentence." Id. See Massachusetts Sentencing Commission, Survey of Sentencing Practices: Truth-in-Sentencing Reform in Massachusetts 6 (Oct. 2000). The Concord sentence was available as a sentencing option even where the defendant was convicted of an offense with a mandatory minimum sentence. See Commonwealth v. Brown, 431 Mass. 772, 778 (2000) (Concord sentence "was a general sentencing option" that was "not incompatible" with mandatory minimum sentence).

through statutory good time or to become eligible for parole at an earlier time are no longer able to do so.

Fourth, while I agree with the court's interpretation of the habitual criminal statute because it comports with the Legislature's intent, I also note that this interpretation does not comport with the common understanding of what constitutes a "habitual criminal."  A "habitual criminal" is commonly understood to be someone who has engaged in recidivism -- that is, an individual who, after having been punished for his or her crimes, nevertheless goes on to commit further crimes.  See Black's Law Dictionary 827 (10th ed. 2014) (referencing definition of "recidivist" under definition of "habitual criminal"); id. at 1461 (defining "recidivist," also termed "habitual criminal," as "[a] criminal who, having been punished for illegal activities, resumes those activities after the punishment has been completed").  Under this common understanding of the term, an individual is considered a habitual criminal only if he or she continues to commit serious crimes after repeatedly being punished for those crimes. Generally, habitual criminal statutes, such as G. L. c. 279, § 25 (b), impose severe punishment only after it is apparent that repeated sentences to prison failed to deter or rehabilitate the defendant, because the defendant continued to commit serious crimes after having twice served prison time for

earlier crimes.[2]  The habitual criminal statute in § 25 (a) is at odds with this common understanding.  Because it does not require the separate and sequential prosecution of predicate offenses, it applies even where the predicate offenses both occurred before any punishment.  Thus, for instance, if an individual struggling with drug addiction and desperate for money to purchase oxycodone robs one convenience store in August and another in September, serves a concurrent three-year prison sentence for each of those robberies, and then commits a new felony after his or her release from custody, he or she would be considered a habitual criminal under § 25 (a) -- even though we generally would not label this individual as such -- and would have to receive the maximum sentence permitted by law for the new offense.

For these reasons, I believe that it is time to reconsider the wisdom and fairness of the habitual criminal statute.  I encourage the Legislature to do so.

---

[2] General Laws c. 279, § 25 (b), imposes the maximum sentence without the possibility of probation or parole for "habitual offenders."  In order to be considered a habitual offender, an individual must have been convicted two times previously of certain enumerated violent offenses, "arising out of charges separately brought and tried, and arising out of separate and distinct incidents that occurred at different times, where the second offense occurred subsequent to the first conviction."